# MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* HURNI PACKING COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 66.   Argued October 11, 1923.—Decided November 12, 1923.

1. In case of ambiguity in a life insurance policy, that construction is to be adopted which is most favorable to the insured. P. 174.
2. The word "date," as applied to a written instrument, signifies primarily the time specified therein. P. 174.
3. Where a life insurance policy declared that it should be incontestable, except for nonpayment of premiums, provided two years should have elapsed "from its date of issue," *held,* that the date intended was the one specified in the policy, although this (by agreement of the parties) was earlier than the dates of actual execution and delivery. P. 175.
4. A provision of a life insurance policy that it shall be incontestable after a specified period from its date of issue inures to the beneficiary of the policy, and applies where the period elapses after the death of the insured. P. 176.

280 Fed. 18, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals, which affirmed a judgment of the District Court for the plaintiff, the present respondent, in an action to recover the amount of a life insurance policy.

*Mr. James M. Beck,* with whom *Mr. Frederick L. Allen, Mr. Ralph L. Read,* and *Mr. Guy T. Struble* were on the brief, for petitioner.

I. The policy was void for fraud.

II. The two-year contestable period commenced to run either on September 7, 1915, when the policy was actually

executed, or on September 13, 1915, when it was delivered and took effect.

The application provides: "The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health." The commencement of the running of the two-year contestability period is expressly stated as the date of issue of the policy. Thus the date of issue is specifically differentiated in the policy itself from the date of the policy.

For the general meaning of the word "issue," see dissenting opinion of Sanborn, J., in this case. Also *Homestead Ins. Co.* v. *Ison,* 110 Va. 18; *Maggett* v. *Roberts,* 112 N. C. 71; *Coleman* v. *New England Life Ins. Co.,* 236 Mass. 552; *McMaster* v. *New York Life Ins. Co.,* 183 U. S. 25.

When the parties to this contract were negotiating, they knew that the date which was to be recited in the policy was to be a fictitious date and not the real date of execution. They also knew that the policy could not be "issued" on that fictitious date because it already had passed. The application was not made until September 2, 1915. The policy had to be executed at the home office of the Company in New York, and was so executed there on September 7, 1915. It then had to be forwarded to Sioux City, Iowa, for delivery, and it was forwarded and was delivered September 13, 1915. Then and only then it became a binding contract. Both parties had agreed that the policy should not be in force and its obligations and limitations would not begin until it was delivered and the first premium paid. It therefore was agreed that the nominal date of the policy should be anterior to the "date of issue." It never was agreed that such date of issue should be the same as a fictitious

date of the policy.  Such an agreement would have been impossible of fulfillment because obviously the policy could not be issued on August 23, 1915, that date being more than one week prior to the date it was applied for.

The incontestability clause, limiting as it does the right of the Company to contest its liability under the policy on the ground of fraud, is a self-imposed limitation of right, for the benefit of the insurer.  It should not, therefore, be so construed as to inflict a greater limitation on the rights of the Company to defend itself against a fraud than clearly arises from the plain wording and meaning of the clause itself.

Where a contract is valid, there is reason for holding that, as the insurer dictates the terms of the contract, any fair doubt should be resolved in favor of the insured.  But does this rule apply with equal force, where the entire contract, including the incontestability provision, is void by reason of the fraud of the insured in procuring the contract?  Does public policy require that, where the defense to the policy is that it is void on the ground of fraud, a clause of the void contract, which limits the power to prove the fraud, should be construed against the insurer and in favor of the insured?

Conceding *arguendo* that the incontestability provision must be construed as favorably to the insured as any other executory clause, this rule does not require an unreasonable construction, which would facilitate a fraud.

The fair and unmistakable intention of the parties was that, when the Company assumed responsibility, it should have two full years thereafter to determine whether the insured had practiced any fraud upon the insurer.  To reduce this limitation by dating it from an anterior and fictitious date not only reduces the two years which the parties manifestly had in mind, but it might altogether destroy such right of rescission, as it would if the limitation had been only six months from the date of issue, and the

policy had been dated back six months from the time of its actual execution.

By construing the " date of issue " to mean either the date of actual execution, or the date of delivery, when the policy by its terms took effect, and not the fictitious date of execution, each expression is given its rational meaning and the provisions are accordant and harmonious.

III. The death of the insured matured the policy; the rights of the parties became fixed then; and the incontestability clause could not become operative.

There are state authorities holding that such a clause is applicable notwithstanding the policyholder may die before the expiration of the contestability period. We contend that the insured must have lived until the expiration of the period in order to make the policy incontestable. *Jefferson Standard Life Ins. Co.* v. *Smith,* 157 Ark. 499; *Jefferson Standard Life Ins. Co.* v. *McIntyre,* 285 Fed. 570. —

The rule that death of the insured stops the running of the contestability period is a necessary implication of the decisions of this Court in *Cable* v. *United States Life Ins. Co.,* 191 U. S. 288, and *Phoenix Ins. Co.* v. *Bailey,* 13 Wall. 616, holding that after death the insurance company cannot bring a suit in equity to rescind for fraud, for the reason that it has a plain, adequate and complete remedy at law by setting up the fraud as a defense in the law action. This rule has been followed in *Griesa* v. *Mutual Life Ins. Co.,* 169 Fed. 509; and *Riggs* v. *Union Life Ins. Co.,* 129 Fed. 207. See also Jud. Code, §§ 267 and 274b. If the insurance company must wait until the action at law is commenced, and assert its defense of fraud in that action, and such remedy is plain, adequate and complete, the rule must rest upon the fact that the rights of both insurance company and beneficiary are fixed by the maturing of the policy through the death of the insured.

There is no doubt that in numerous cases, in both federal and state courts, the question was involved but passed over *sub silentio*. See *Aetna Life Ins. Co.* v. *Moore,* 231 U. S. 543; *Prudential Ins. Co.* v. *Moore,* 231 U. S. 560. An examination of the records in these cases discloses no evidence of any extra-judicial "contest" before the one-year contestability period expired.

The incontestability clause cannot always be given a strictly literal construction in order to fix the date when the contestability period expires. Otherwise, it would often operate to terminate a litigation in the very midst of a trial. Such construction ignores the fundamental fact that, in case of a life insurance policy, the death of the insured is the crucial and decisive fact determining the rights and duties of the contracting parties.

There are many cogent reasons why it may be said that it is the intention of the parties to the contract of insurance that the insured must live two years in order to make the incontestability clause applicable. Against these there can be advanced no reason except that, generally speaking, a policy will be construed, in case of an ambiguity, against the insurance company and in favor of the claimant.

The main error in the decisions of some state courts, which hold the incontestability clause applicable notwithstanding the death of the insured during the contestability period, is in failing to differentiate between the policy of insurance, as such, and the obligation arising therefrom between the claimant and the insurance company after the death of the insured. A contract of insurance necessarily imports, among other things, a so-called "risk." After the insured is dead the contract is no longer one of insurance, but of payment, if the policy is valid. See *Mellen* v. *Hamilton Fire Ins. Co.,* 17 N. Y. 609.

By the incontestability clause the insurance company undertakes that, provided it continues to insure against

the risk for a period of two years after the policy is issued, thereafter it will make no defense against a claim under the policy. It is therefore obvious that the risk must continue for the period of two years.

To state the proposition another way: The insurance company limits its right to cancel or rescind the policy for any reason whatsoever, except for the nonpayment of premiums, to a period of two years, provided the policy exists as a policy of insurance for that time. After two years have elapsed from the date of issue, the policy cannot be rescinded except for the nonpayment of premiums; and in the event of the death of the insured after two years, the obligation to pay becomes absolute. It is obvious that the insurance company intended to reserve to itself the privilege of investigation to determine whether or not it desired to continue the risk. The period of time during which it might investigate is limited to two years. If the insured dies before the two-year period of contestability (and incidentally the period wherein investigation could be made), the insurance company would not be able to make as full and complete an investigation as if the insured were alive and able perhaps to answer questions or be under observation. Moreover the company can neither begin suit nor give notice of rescission until legal representatives are appointed for the deceased insured.

There never was a contract with the beneficiary that the policy should ever be incontestable. There was a contract with the insured that the policy should be incontestable provided the contract relationship between the insured and the insurance company continued during the lifetime of the insured for the period of two years. This construction of the contract is much the more reasonable and just.

IV. Notice by the insurance company denying liability on the policy was a " contest " and prevents the assertion of an estoppel under the incontestability clause.

*Mr. Charles M. Stilwill* and *Mr. Edwin J. Stason,* for respondent, submitted.

Mr. Justice Sutherland delivered the opinion of the Court.

This is an action to recover the amount of a life insurance policy issued by the petitioner to Rudolph Hurni. At the conclusion of the evidence the jury found for the plaintiff, respondent here, under the peremptory instruction of the court, and judgment was rendered accordingly. Upon appeal this judgment was affirmed by the Court of Appeals. 280 Fed. 18.

There were two trials below. Upon appeal following the first, the Court of Appeals reversed a judgment in favor of plaintiff on the ground of material misrepresentation by the insured. 260 Fed. 641. Pending the second trial plaintiff amended its reply to the answer and alleged for the first time that this defense was barred, under the terms of the policy, by defendant's failure to contest within two years.

The policy was applied for on September 2, 1915. It was in fact executed on September 7th but antedated as of August 23, 1915, and was delivered to insured about September 13th. The insured died on July 4, 1917.

The application provides that " the applicant upon request may have the policy antedated for a period not to exceed six months." Underneath the heading of the application there was written the direction: " Date policy August 23, 1915; age 47." The testimonium clause, followed by the signatures of the officials, reads: " In Witness Whereof, the company has caused this policy to be executed this 23rd day of August, 1915." The policy acknowledges the receipt of the first premium and provides that a like amount shall be paid " upon each 23rd day of August hereafter until the death of the insured."

The determination of the case depends upon the meaning of a clause in the policy as follows: " Incontestability. This policy shall be incontestable, except for non-payment of premiums, provided two years shall have elapsed from its date of issue." The trial court held that the words " its date of issue " were to be construed as referring to the date upon the face of the policy, viz: August 23, 1915; and this was also the view of the Court of Appeals. The first action taken by the Insurance Company to avail itself of the misrepresentation of the insured was on the 24th day of August, 1917, one day beyond the period of two years after the conventional date of the policy. It is contended on behalf of the Insurance Company: (1) That the period of incontestability did not begin to run until the delivery of the policy, or, in any event, until its actual execution on September 7th; and (2) That the policy was matured by the death of the insured, and the rights of the parties thereby became fixed so that the incontestability clause never became operative, even within the conventional limitation.

First. The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. *First National Bank* v. *Hartford Fire Insurance Co.*, 95 U. S. 673, 678–679; *Thompson* v. *Phenix Insurance Co.*, 136 U. S. 287, 297; *Imperial Fire Insurance Co.* v. *Coos County*, 151 U. S. 452, 462.

The word " date " is used frequently to designate the actual time when an event takes place, but, as applied to written instruments, its primary signification is the time specified therein. Indeed this is the meaning which its derivation (*datus*=given) most naturally suggests. In *Bement & Dougherty* v. *Trenton Locomotive, &c., Co.*,

32 N. J. L. 513, 515–516, it is said: " The primary signifi- cation of the word *date,* is not time in the abstract, nor time taken absolutely, but, as its derivation plainly indi- cates, time *given* or specified, time in some way ascer- tained and fixed; this is the sense in which the word is commonly used. When we speak of the date of a deed, we do not mean the time when it was actually executed, but the time of its execution, as given or stated in the deed itself. The date of an item, or of a charge in a book account, is not necessarily the time when the article charged was, in fact, furnished, but simply the time given or set down in the account, in connection with such charge." This language was used in construing a provi- sion of the New Jersey lien law to the effect that no lien should be enforced unless summons be issued " within one year from the date of the last work done, or materials fur- nished, in such claim "; and, specifically applying it to that provision, the court concluded: "And so ' the date of the last work done, or materials furnished, in such claim,' in the absence of anything in the act indicating a different intention, must be taken to mean the time when such work was done or materials furnished, as specified in plaintiffs' written claim."

Here the words, referring to the written policy, are " from its date of issue." While the question, it must be conceded, is not certainly free from reasonable doubt, yet, having in mind the rule first above stated, that in such case the doubt must be resolved in the way most favorable to the insured, we conclude that the words refer not to the time of actual execution of the policy or the time of its delivery but to the date of issue as specified in the policy itself. *Wood* v. *American Yeoman,* 148 Iowa, 400, 403–404; *Anderson* v. *Mutual Life Insurance Co.,* 164 Cal. 712; *Harrington* v. *Mutual Life Insurance Co.,* 21 N. D. 447; *Yesler* v. *Seattle,* 1 Wash. 308, 322–323. It was competent for the parties to agree that the effective

date of the policy should be one prior to its actual execution or issue; and this, in our opinion, is what they did. Plainly their agreement was effective to govern the amount of the premiums and the time of their future payment, reducing the former and shortening the latter, and, in the absence of words evincing a contrary intent, we are unable to avoid the conclusion that it was likewise effective in respect of other provisions of the policy, including the one here in question. This conclusion is fortified by a consideration of the precise words employed, which are "from *its* [that is, the policy's] date of issue;" or, in other words, from the date of issue as specified in the policy. It was within the power of the Insurance Company if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the rule that the doubt for which its own lack of clearness was responsible must be resolved against it.

Second. The argument advanced in support of the second ground relied upon for reversal, in substance, is that a policy of insurance necessarily imports a risk and where there is no risk there can be no insurance; that when the insured dies what had been a hazard has become a certainty and that the obligation then is no longer of insurance but of payment; that by the incontestability clause the undertaking is that after two years, provided the risk continues to be insured against for the period, the insurer will make no defense against a claim under the policy; but that if the risk does not continue for two years (that is, if the insured dies in the meantime) the incontestability clause is not applicable. Only in the event of the death of the insured after two years, it is said, will the obligation to pay become absolute. The argument is ingenious but fallacious, since it ignores the fundamental purpose of all simple life insurance, which is not to enrich the insured but to secure the beneficiary, who has, therefore, a real, albeit sometimes only a contingent, interest in the policy.

It is true, as counsel for petitioner contends, that the contract is with the insured and not with the beneficiary but, nevertheless, it is for the use of the beneficiary and there is no reason to say that the incontestability clause is not meant for his benefit as well as for the benefit of the insured. It is for the benefit of the insured during his lifetime and upon his death immediately inures to the benefit of the beneficiary. As said by the Supreme Court of Illinois in *Monahan* v. *Metropolitan Life Ins. Co.,* 283 Ill. 136, 141: " Some of the rights and obligations of the parties to a contract of insurance necessarily become fixed upon the death of the insured. The beneficiary has an interest in the contract, and as between the insurer and the beneficiary all the rights and obligations of the parties are not determined as of the date of the death of the insured. The incontestable clause in a policy of insurance inures to the benefit of the beneficiary after the death of the insured as much as it inures to the benefit of the insured himself during his lifetime. The rights of the parties under such an incontestable clause as the one contained in this contract do not become fixed at the date of the death of the insured."

In order to give the clause the meaning which the petitioner ascribes to it, it would be necessary to supply words which it does not at present contain. The provision plainly is that the policy shall be incontestable upon the simple condition that two years shall have elapsed from its date of issue;—not that it shall be incontestable after two years if the insured shall live, but incontestable without qualification and in any event. See *Monahan* v. *Metropolitan Life Ins. Co., supra; Ramsey* v. *Old Colony Life Ins. Co.,* 297 Ill. 592, 601; *Ebner* v. *Ohio State Life Ins. Co.,* 69 Ind. App., 32, 42–48; *Hardy* v. *Phoenix Mutual Life Ins. Co.,* 180 N. Car. 180, 184–186.

Counsel for petitioner cites two cases which, it is said, sustain his view of the question: *Jefferson Standard Life*

74308°—24——12

*Ins. Co.* v. *McIntyre,* 285 Fed. 570, and *Jefferson Standard Life Ins. Co.* v. *Smith,* 157 Ark. 499. But the incontestability clause under review in those cases was unlike the one here. There the clause was: "After this policy shall have been in force for one full year from the date hereof it shall be incontestable," etc. The decisions seem to have turned upon the use of the words "in force," the District Judge in the first case saying: "Are the policies 'in force,' as contemplated in the cause, after the death of the assured occurring prior to one year from the date of the policy? It seems to me that the proper construction of this clause is that it contemplates the continuance in life of the assured during that year; else why except the nonpayment of premiums?" This amounts to little more than a *quaere,* since the question was then dismissed and the case decided upon another ground. We express neither agreement nor disagreement with the construction put by these decisions upon the provision therein considered; but dealing alone with the provision here under review, we are constrained to hold that it admits of no other interpretation than that the policy became incontestable upon the sole condition that two years had elapsed.

Certain difficulties, both legal and practical, said to arise from this interpretation, in respect of the enforcement of the rights of the insurer, are suggested by way of illustration. But these we deem it unnecessary to review. It is enough to say that they do not, in fact, arise in the instant case and they could not arise except as a result of the contract, whose words the Insurance Company itself selected and by which it is bound.

The judgment of the Court of Appeals is

*Affirmed.*