COTTON STATES LIFE INS. CO. *v.* CUNNINGHAM.*

(Division A.    Jan. 18, 1926.)

[106 So. 766.    No. 25373.]

CANCELLATION OF INSTRUMENTS. *In absence of special circumstances, no cancellation after insured's death for fraud; this being available as defense to action on policy.*

    Suit will not lie to cancel life policy after insured's death for fraud in obtaining it, there being no incontestability clause, requiring speedy action, nor other special circumstances; the fraud being available as defense to action on policy.

*Corpus Juris-Cyc. References; Cancellation of Instruments, 9 C. J., pp. 1172, n. 98; 1174; n. 9, 10; Equity, 21 C. J., p. 24, n. 39.

APPEAL from chancery court of Holmes county.

HON. T. P. GUYTON, Chancellor.

Suit by the Cotton States Life Insurance Company against Mrs. R. K. Cunningham. From an adverse decree, complainant appeals. Affirmed.

*G. H. McMorrough* and *Hillman Taylor,* for appellant.

An examination of the pleadings and exhibits show that this suit was filed on the theory that a fraud had been perpetrated upon the insurer, that it acted as soon as it ascertained this fact and that it had a right to go in equity court and cancel and avoid said contracts or policies of insurance, because of the fraudulent statements as to material matters by the insured in getting or procuring said insurance policies or contracts.

Our contention is that there was a fraud perpetrated upon the insurance company by the insured at the time he executed and delivered the application (including his answers to the medical examiner), which application was copied into the said policy of insurance and became an integral part thereof and upon which the policies were issued; that the insurer, being misled by the fraud and imposition, is entitled to have the said alleged contracts or policies of insurance cancelled and avoided in a court of equity. 1 Pom. Equity (2 Ed.), sec. 188; *Meek* v. *Spacher* (Va.), 12 S. E. 397; 2 Pom. Equity (3 Ed.), sec. 918.

It is a well settled question of equitable jurisprudence that if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. When equity can give relief, plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law. *Raymon* v. *Taac. Co.* (U. S.), 52 L. Ed. 88, 89; *Davis* v. *Walker*, U. S. 39 L. Ed. 578; *U. P. R. R. Co.* v. *Weld Co.* (U. S.), 62 L. Ed. 1110. Fraud vitiates everything. See *Foxworth* v. *Bullock*, 44 Miss. 457.

If representations were material, and were made either with or without an actual fraudulent intent, and really did mislead the purchaser, and induce him to make the bargain, relying upon him, the contract cannot stand. *Oswald* v. *McGehee*, 28 Miss. 351. See, also, *Davis* v. *Heard*, 44 Miss. 50; *Rimer* v. *Dugan*, 39 Miss. 477.

In the following cases instruments procured by fraud were ordered cancelled by courts of equity, even when the fraud might have been successfully pleaded in defense to actions at law which had not been begun when the equitable petition was filed. These decisions are based generally upon the ground that equity has concurrent jurisdiction in such cases with courts of law, and that the propriety of granting relief rests in the sound discretion of the chancellor. See 8 Anno. Cas., page 551 and cases cited in notes; *Waddell* v. *Lewis*, 62 Ala. 347; *Com. L. Mut. Ins. Co.* v. *McLoon*, 14 Allen (Mass.) 351; *John Hancock Mut. L. Ins. Co.* v. *Dick* (Mich.), 43

L. R. A. 566; *McTavish* v. *Kent,* 80 N. W. 1086; *Fid. Mut-Life Ins. Co.* v. *Blain,* 107 N. W. 877; *Whittingham* v. *Thornburg* (Eng.), 2 Vern. 206; *Nat'l Life Ins. Co.* v. *Eagan* (Canada), 20 Grant Chan. 269.

When it clearly appears that the party against whom rescission is sought was guilty of fraud, misrepresentation or deceit, or some other wrong of equal force in violating the contract, the circumstance that the contract has been fully and voluntarily perfected before the discovery of the facts giving rise to the right of rescission, will not operate to prevent the court from granting relief. Under such circumstances the right to rescind is none the less avoidable after full performance if the person seeking this relief has not by his conduct waived the right that other party can be put *in status quo,* and that no adverse rights of third persons have intervened. This principle is sustained by a long list of cases in 1 Anno. Cases, page 517, including *Liddle* v. *Sims,* 9 S. & M. 596.

A provision in an insurance policy making it incontestable after the lapse of a specified time does not cease to operate when the insured dies within the time specified but continues thereafter for the benefit of the beneficiary and therefore, if contest is not instituted within the time specified, it is too late. *Mut. Life Ins. Co.* v. *Hurnia Pack. Co.* (U. S.), 68 L. Ed. 235.

The commencement of an action on an insurance policy within the time allowed for contest does not extend the time as provided thereby for the period allowed for filing an answer; but the contest must actually be made within the time specified. *Mo. State Life Ins. Co.* v. *Crawford* (Ark.), 31 A. L. R. 93. The cases of *Monohan* v. *Mut. Life Ins. Co.,* L. R. A. 1918 D. 1196 (Ill.) and *Becker* v. *Ill. Life Ins. Co.* (Mich.), 198 N. W. 884, hold that the said defense cannot be pleaded after two years, even if the insured died within the two years. Hence this complainant at bar could not protect itself in any other way than by filing this suit, as nothing had been done by defendant except to demand payment of the policies. She

could have waited one day less than six years after the death of insured and filed suit on the policies in the circuit court of Holmes county or possibly in the chancery court, and the insurance company would have been powerless to defend on the ground of fraud and misrepresentation on the part of the insured and the replies to the question of the medical examiner. Or even beneficiary (defendant herein) could have filed suit in the circuit court before the policy was two years old and afterwards taken a non-suit and at a later date (less than six years from death of insured) filed a new suit and cut the insurance company off from its legitimate defense of fraud on the part of the insured.

*Barbour & Henry* and *Boothe & Pepper,* for appellee.

The appellee, defendant below, interposed a demurrer to this bill upon the ground that there was a full, complete and adequate remedy at law. This is based upon the proposition that the alleged fraud, or false answers, in the application could be pleaded successfully and defeat recovery in any suit brought by the beneficiary upon the policy in a law court.

The policy here involved must be in force two full years during the lifetime of the insured. In that event, it is incontestable. The allegations of the bill show that it had been in force something less than a year. Therefore, it is contestable whenever the insured, within six years under our statute of limitations, brings suit in an action at law to recover the amount provided in the policy to be payable upon the death of the assured. Therefore, in the absence of some special circumstance, whereby it is made to appear that the defense of fraud cannot be effectually interposed in an action at law, the right of the insurer to make this defense is plain, adequate and complete.

A thorough examination of the authorities shows that equity will not entertain a bill to cancel in the case like this, unless some special circumstances are shown to exist

whereby the adequacy and completeness of the remedy at law is impaired. One of the leading cases on the question is *Home Insurance Co.* v. *Stansfield,* Fed. Cases 6660. Another leading case is *Phoenix Mutual Life Ins. Co.* v. *Bailey,* 13 Wall. 616, 20 L. Ed. 501. See, also, *Cable* v. *U. S. Life Ins. Co.,* 191 U. S. 288, 48 L. Ed. 188. A reference to Rose's notes will show that the Cable case and the Bailey case have been followed by practically every court in the Union. *Woefle* v. *The Sailors* (Tenn.), 12 L. R. A. (N. S.) 881 and note; *Bankers Reserve Life Ins. Co.* v. *Omberson* (Minn.), 48 L. R. A. (N. S.) 265 and note.

Counsel for appellant relies upon *John Hancock Mutual Life Co.* v. *Dick,* 43 L. R. A. 566, which is a Michigan case. This case is discussed in the note to the *Woefle case, supra,* and it is there shown that Michigan stands alone in supporting the contention of appellant.

McGOWEN, J., delivered the opinion of the court.

From a decree sustaining a demurrer to the amended bill filed by the Cotton States Life Insurance Company, appellant here, against Mrs. R. K. Cunningham, appellee, the life insurance company appeals.

The bill alleges: That Mrs. Ruby K. Cunningham was the widow of John Emmet Cunningham, and beneficiary under two policies of life insurance issued by it upon the life of John E. Cunningham, deceased. That he died on July 23, 1924, and that the defendant Burwell had been duly appointed administrator c. t. a. of the decedent's estate. That in August, 1923, John E. Cunningham made application and requested complainant to issue insurance upon his life in the amount of ten thousand dollars. That the medical examination was made by Dr. Turnipseed. That the medical examination, including Cunningham's answers thereto, to the medical examiner, was the basis upon which complainant issued the life insurance policies of five thousand dollars each. Copies of the policies were attached to the bill. The applications

signed by Cunningham were a part of the policies, and were also attached. That the applications, including the answers to the medical examiner by Cunningham, the insured, were warranties. That the insured made the following answers to the following questions: "Are you now, and for the past five years have you been in good health?" To which the applicant answered, "Yes." "When did you last consult a physician, and for what disease?" To which applicant answered "never." "Have you now or since childhood chronic hoarseness, tonsilitis, asthma, pneumonia, pleurisy, la grippe, spitting of blood or hemorrhages, shortness of breath or fainting spells, palpitation or any disease of the throat, lungs or heart?" To which applicant answered "No." "Have you had any disease or any injury, requiring a physician or surgeon, other than as stated above?" To which applicant answered "No." Disease requiring services of physician or surgeon for the past ten years?" To which applicant answered "None."

The bill alleged that all these answers were false and were untrue, and known to be false and untrue by the applicant, and made for the purpose of defrauding and cheating complainant; that the answers were warranties material, which warranties were the basis for the issuance of the policies described in the bill; that the policies would not have been issued if true answers had been made to the answers above quoted; and that about the same time the applicant had secured ten thousand dollars from another company.

The bill further charged that at the time the answers were signed by the applicant he was not in good health; that he had been in poor health for several years, and that for several years he had been suffering from fainting spells, a diseased and weak heart, and an extremely injurious and unhealthy high blood pressure, which was injuring his health and his life; that he had consulted various reputable physicians, and had been under their care and treatment; that he had been on a restricted diet, even receiving medicine from physicians, and purchased

medicine upon the advice and prescription of a physician; and that this state of affairs as to his health had stood for five years—all of which was known to the applicant when he answered the questions as above set out.

The appellant tendered back four hundred thirty dollars in premiums which had been paid by the applicant. The policies involved in this litigation had been in force about eleven months when the applicant died.

The complainant further asserted that it had the right to have the policies canceled because of the fraud and injury perpetrated upon it; and that it had no other method of seeking said cancellation and surrender except in a court of equity, and prayed that the policies be canceled; that the original policies be ordered produced by the defendant in open court; that they then be canceled, annulled, and declared void; and that the defendants and all parties privy to them be enjoined from asserting any claim whatsoever upon said policies against complainants.

A demurrer raised the question that the bill showed on its face that the complainant had a full, complete, and adequate remedy at law, and the court below sustained the demurrer. A close study of this bill does not, in substance, differentiate it from the usual notice of special matter given by insurance companies seeking to avoid payment of a policy because of false answers made by the insured to questions propounded by the medical examiner, which answers were made warranties by the applicant who signed the application. No special reason is alleged for invoking the jurisdiction of equity in this case, and no reasons for ousting the law courts of jurisdiction of this cause, of which, unquestionably, under the Constitution, the circuit court has original jurisdiction. The counsel cites cases from Canada and Michigan wherein the jurisdiction of equity to cancel an insurance policy for fraud seems to have been upheld. We notice especially the case of the *Mutual Life Insurance Co.* v. *Hurni Packing Co.*, 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. But it will be noted in

that case that the special reason, as we view it, for the intervention of equity, was that the policy contained an incontestable clause provided that the company could interpose no contest after two years from the date of issuance of the policy, and the suit was brought within the two-year period, and which, as in most of the cases cited, are substantially as follows:

"Incontestability. This policy shall be incontestable except for nonpayment of premiums, provided two years have elapsed from its date of issuance."

The counsel for appellant cites the case of *Williams* v. *New York Life Insurance Co.,* 132 Miss. 345, 96 So. 97, which involved a bill in equity, and which apparently had a clause to the same legal effect as quoted above. The bill was to cancel a policy on account of fraud and misrepresentation, and Mr. Justice Sykes said, "The policy provides that it shall be incontestable after two years. The suit was brought within the two years in the chancery court, but the subpœna for the defendant (appellant) was not issued or served until the expiration of this time;" and the only point decided in the case was that the filing of the bill in good faith is the beginning of the suit.

We have not here before us the incontestable clause which was considered by the supreme court of the United States and which is urged so strenuously upon us, nor the *Williams case,* quoted, *supra,* for this policy here involved contains the following as its incontestability clause:

"Incontestability—15. This policy is nonforfeitable and incontestable after it shall have been continuously in force for two full years prior to the death of the insured, except for nonpayment of premium; provided, however, this incontestable clause neither applies to the total disability benefits nor to the accidental death indemnity clause, if either is attached hereto."

So it will be noted that this incontestable clause takes care of the insurance company in this case, as the defense of false and fraudulent warranties by the insured upon

141 Miss.—31.

material matters is a good defense for and during the
same period and for the same length of time as the orig-
inal cause of action based on the insurance policy shall
exist; and it is not true that the two-year incontestable
clause applies in this case for the reason that the insured
died within less than one year of the date of the policy,
and for this clause to have any play in this case the
policy must have been in force two years prior to the
death of the insured, so the incontestability feature fades
out of this case. In the note to the *Woelfle case,* found in
12 L. R. A. (N. S.) 881, is, well stated the rule, and the
overwhelming weight of authority sustains the rule laid
down in the above case that a court of equity will not,
after the loss insured against has occurred, cancel a pol-
icy of insurance and enjoin proceedings at law thereon
merely upon the ground that the policy was procured
through the fraud of the insured, since such a defense is
fully available at law, there citing numerous cases.

The insurance company in this case sought to cancel
this policy, alleging no other circumstances except the
fraudulent and false statements of the applicant. No
other reason is assigned, and no special injury can result,
as it is not a case where the beneficiary in the policy may
decline to bring suit until after two years, thereby de-
priving the defendant of a defense good at law. In oth-
er words, the incontestable features of the policies here
involved do not arise in this case, and in that respect is
differentiated from the *Mutual Life Insurance Co.* v.
*Hurni Packing Co. case,* cited above. There the incon-
testable clause was in effect under the contract; here it
has no application, and no special injury is shown nor
reason assigned for the intervention of equity save the
alleged fraud of the deceased, which defense is unqual-
ifiedly available to the insurance company in a court of
law, the circuit court.

We must remember that our Constitution has estab-
lished a well-defined line of demarcation between the
courts of law and the equity courts, and we are unwilling
to hold that merely upon a charge of fraud that all the

litigation arising out of the issuance of insurance policies may thereby be diverted from the law court to the equity court, and thus deprive the litigant of the believed to be valuable right of trial by jury.

We conclude that this bill seeks to cancel the policy solely upon the ground of fraud, and that is the only basis of equity jurisdiction, which ground and which facts are all permissible as a defense by a proper pleading in a court of law, and therefore equity has no jurisdiction where no special injury or unusual circumstances requiring the intervention of equity is set up in such a bill.

The demurrer was properly sustained. The court below so held and dismissed the bill. Complainant having declined to further amend its bill, the action of the chancery court is approved by this court.

*Affirmed.*