## SEABOARD FUEL CORPORATION v. UNITED STATES et al.

(District Court, E. D. Pennsylvania. July 27, 1926.)

### No. 143.

Sales ⚖=54—Contract for sale of coal held enforceable in admiralty in accordance with its terms, after correction of a manifest mistake.

Where, in a contract for sale of coal, an error was made by misplacing a decimal point in figures, which error was one that a court of equity would correct as a mistake in a suit for reformation, the contract will be read in admiralty in accordance with its terms as corrected.

In Admiralty. Suit by the Seaboard Fuel Corporation against the United States, owner of the steamship Eastern Dawn, and the United States Shipping Board Emergency Fleet Corporation. On exceptions to libel. Exceptions sustained.

J. Thurston Manning, Jr., of Philadelphia, Pa. (Acker, Manning & Brown, of Philadelphia, Pa., on the brief), for libelant.

Clinton M. Hester, Admiralty Atty., U. S. Shipping Board, of Washington, D. C., (George W. Coles, U. S. Atty., of Philadelphia, Pa., of counsel), for respondents.

DICKINSON, District Judge. The claim here is for coal supplied to a vessel of the United States operated by the United States Shipping Board Emergency Fleet Corporation. The latter company contracted the debt. Against it the proceeding is in personam. It would be ordinarily in rem against the vessel, the owner of which would appear only as a claimant. Under the provisions of the Act of Congress (Comp. St. §§ 1251¾—1 to 1251¾—10), however, the libel is in form in personam against the United States. For all the purposes of discussion, the case is one of simple contract. There were a number of subsidiary questions raised and discussed, but the parties finally stipulated at bar that judgment might go in accordance with the proper construction of the contract as if upon a case stated.

The contract grew out of a proposal and acceptance. The coal was to be subject to analysis in respect to its quality, to be determined by the Bureau of Mines. Payment of 85 per cent. of the contract price was paid down on delivery, the 15 per cent. being withheld until the analysis determined the deduction to be made, or "penalty," as it is termed, incurred because of shortage in quality. The only controversy is over how this deduction

is to be figured, all other questions being expressly waived. The libelant avers the proper rate of percentage of deduction to be .083, and the respondent that it is 8.3. It will be observed that the difference is in the placement of the decimal point. Translated into the money dispute, the libelant stands for a deduction of $5.10; the respondent for $510.04, to be made from the otherwise undisputed claim. The difference is due to a circumstance.

The contract sets forth a percentage scale of the coal ingredients, such as volatiles, fixed carbons, sulphur, and the like, which the standard coal should have. The analysis of the coal supplied is then to be compared item by item with the standard, and the difference in percentage and the total of the percentage differences is to be likewise noted. The thought is that the extent to which the supplied coal is short of the required standard is to be translated into terms of money, and the sum thus reached deducted from the contract price.

The method of calculation is prescribed in these words: "The amount of the penalty is to be determined by multiplying the mine price by the sum of differences between the percentage shown by the analysis made by the Bureau of Mines and that required by the above [the standard] analysis. Example of method is as follows." Then follows a statement in percentage of the standard analysis, and a supposititious analysis of coal supplied, and the differences are carried into a separate column and these percentage differences are footed up to give the total.

In carrying out the differences, an error, mathematical or typographical, was made by placing the decimal too far to the left by two spaces, resulting in the percentages and the total percentage being made to appear to be the one-hundredth part of what should have been shown. Assuming the fact of error, the question presented to us is whether the libelant's proper claim should be figured on the basis of the erroneous figures, or that of mathematical truth.

The argument for the libelant is based upon two propositions:

1. The contract, having been expressed in the words chosen for the purpose by the respondent, is, in case of ambiguity or of being open to two constructions, to be given the meaning most favorable to the libelant. This proposition is supported by a number of citations, among which are Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Texas & P. R. Co. v. Reiss, 183 U. S. 621, 22 S. Ct.

253, 46 L. Ed. 358; London Assur. v. Companhia, 167 U. S. 149, 17 S. Ct. 785, 42 L. Ed. 113; First National Bank v. Hartford F. Insurance Co., 95 U. S. 673, 24 L. Ed. 563.

The proposition must, of course, be accepted, both upon reason and authority. The principle invoked, however, has just as clearly no application. The problem here is not one of construction, but of the correction of an error. The applicable doctrine is the equitable one of the reformation of a writing for fraud, accident, or mistake, and here for the correction of a mistake.

2. The second basis of the argument is one which goes to the equities of the suggested reformation. It is that "proposals are addressed, not to lawyers, but to business men," and a business man, guided by the figures of the example, would regard the deduction, on other than large contracts, to be so small as to be negligible, and hence would be misled to his injury if a correction of the figures was permitted.

Before stating the conclusion reached, a comment is called for on the present status of this litigation. The libelant is really suing to recover for "goods sold and delivered at a contract price." If it claimed (as it does) that the coal was up to specifications, it might have claimed for the contract price (allowing a credit on account), and have left the deficiency in quality to have been set up as a defense. In order to present the real and only question for decision, and thus save time and expense, the libel sets forth the deduction claimed and the contract basis for it, and then denies the basis, thus asserting its right to its undiminished claim. The respondent has thereupon in effect demurred, by filing exceptions to the libel. There is grave doubt whether the record is in shape for the entry of a final judgment, because the stipulation at bar stops short of a full agreement upon the facts.

We can, however, express our opinion upon the point of law which we understand to be presented by analogy to an affidavit of defense raising questions of law under the Pennsylvania Practice Act of 1915 (P. L. 483; Pa. St. 1920, §§ 17181–17204). The parties may, if they choose, accept of this ruling or put the cause in shape for a final one. Assuming the error (which would seem to clearly appear) is one which equity would correct upon proper proofs, our view is that the sum to be deducted from the contract price is $510.04. We have not seen the contrasted figures, and do not know enough about the ingredients of marketable coal to know what an analysis of it should show. It

is theoretically possible, however, that some of the ingredients would be deleterious, and a standard be fixed which should not be exceeded, while another ingredient would be an element of added value, and hence the standard be a minimum. This would call for plus and minus percentages, with a total reached, not by an arithmetical, but an algebraic, addition.

The contract phrases what is doubtless intended to be this thought by providing: "Samples of coal thus analyzed must produce an analysis in every element equal to or better than the following" standard analysis. Whether the "better" is a higher or lower percentage, or is a higher on some ingredients and a lower on one or more of the others, we do not find to have been set forth. This question does not arise, because the parties agreed at bar that the proper deduction is either $5.10 or $510.04.

If the proctors for the respective parties are able to agree that the record may be put in shape to permit of final judgment being now entered, leave to move for such judgment is granted; otherwise, to move for an order which will effectuate the ruling now made.