## GREENBAUM v. COLUMBIAN NAT. LIFE INS. CO. OF BOSTON, MASS.
### No. 84.

Circuit Court of Appeals, Second Circuit.
Dec. 12, 1932.

Platt, Taylor & Walker, of New York City (Eli J. Blair, of New York City, of counsel), for appellant.

Reuben Myron Cohen, of New York City (Harry A. Gordon and Emanuel Sobel, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On November 10, 1928, Arthur G. Greenbaum, a resident of New York, applied to the defendant, a Massachusetts corporation, for a policy of insurance upon his life. The application was in writing. The amount of insurance applied for was $50,000. The policy was issued November 16, 1928. On November 27, 1928, he made another application, which was in all respects now material the same as the first, for insurance to the additional amount of $2,000. This policy was issued November 28, 1928. He was examined by a physician acting for the defendant before the first policy was issued but the nature and extent of that examination does not appear. No other medical examination was made before the second policy was issued. He paid a first and a second quarterly premium on each policy, before his death occurred at St. Lukes Hospital on February 26, 1929, from cancer of the testicle which caused a brain hemorrhage. The defendant, upon the ground that Greenbaum was not in sound health at the time either policy was delivered, declined to pay the insurance and attempted to rescind both policies upon a tender of the premiums paid. Thereupon, the plaintiff, as administratrix of the estate of the deceased which was the beneficiary under each policy, brought suit in the state court in New York to enforce payment. The suit was removed to the District Court on the ground of diversity.

Both applications for insurance were made upon the express agreement: (1) "That the insurance hereby applied for shall not take effect until the issuance and delivery of the policy and the payment of the first premium thereon while the Proposed Insured is in sound health." In both, the deceased stated that he had no disease or disorder. In both, he stated that he had never "suffered from, taken treatment for, or consulted a physician for cancer." The following provision was made a part of each policy: "All statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it unless contained in the written application and a copy of the same attached thereto." Each also provided that: "This policy shall be incontestable after one year during the lifetime of the Insured from date of issue except for non-payment of premium, subject, however, in case of misstatement of age to an adjustment of the insurance proportionate to the premium at the true age."

At the request of the defendant, the plaintiff's husband, who was acting for her generally in dealing with the defendant in attempting to collect the proceeds of these policies, sent to it, as a part of the proof of death, a certified copy of the official death certificate on file in the bureau of records, department of health, in the city of New York. This was introduced in evidence by the defendant and contained the statement that the duration of the last illness of Greenbaum was six months. The defendant also introduced expert testimony to the effect that he was afflicted with the cancer when the policies were delivered. The evidence tending to show that the deceased was suffering from cancer at the time the policy was delivered was not rebutted except by the testimony of the plaintiff, who was his mother, and that of one Fried, a business associate. They testified merely that he had not appeared to be ill or complained of illness to them.

■ It was undisputed that the death of the plaintiff's intestate was caused by cancer within three months after the date of each policy. It is likewise beyond dispute that the parties to the policies expressly agreed that the insurance would not take effect until the payment of the first premium was made while the proposed insured was in sound health. This was a valid condition upon the validity of the policies as contracts of insurance. Subar et al. v. New York Life Ins. Co. (C. C. A.) 60 F.(2d) 239. The undisputed payment by him of the first premiums showing their acceptance by the defendant; the delivery of the policies; the fact that these things took place after a physician had previously, in behalf of the defendant—made a physical examination and discovered no cancer or other disease would ordinarily be enough to establish prima facie the facts necessary to make the policies take effect as insurance contracts. Scharlach v. Pacific Mut. Life Ins. Co. (C. C. A.) 9 F.(2d) 317.

■ But in this case the certificate of death which had a tendency to show that the deceased was suffering from cancer six months before his death was evidence, rebuttable to

be sure, in the nature of an admission by the plaintiff that the deceased was not in sound health when the policies were delivered. Hanna v. Connecticut Mutual Life Insurance Co., 150 N. Y. 526, 44 N. E. 1099; Rudolph v. John Hancock Mut. Life Ins. Co., 251 N. Y. 208, 167 N. E. 223.

When the plaintiff rested, as she did without calling any witnesses or introducing any more proof of sound health than that already indicated, the defendant called two doctors, who had never seen Greenbaum but who were qualified as experts of many years' experience with numerous cases of cancer, who testified that his death could not have been caused by the cancer, which beyond question did cause it, unless he had been afflicted with that disease for at least four and one-half months before his death. One of them testified six months. The testimony of a doctor who had been an interne in the hospital where Greenbaum died and who had cared for him there was excluded as privileged under sections 352 and 354 of the Civil Practice Act of New York.

To rebut the admission in the certificate of death and the evidence of these two experts, the plaintiff, as already stated, introduced no evidence but the brief testimony of herself and that of Fried, which at best can mean no more than that the deceased did not act or speak in any way which led them to believe that he was not in sound health at the time the policies were delivered and the premiums paid. The weakness of this sort of rebuttal, if it can be called that, is self-evident. It is doubtful whether it had the least tendency to offset the effect of the evidence of the actual existence of cancer. No one can believe, without more, that these lay witnesses knew anything about the symptoms of cancer in its early stages, or would have been able to recognize any of them. As the evidence in this case, considered in its entirety, did not show that the deceased was in sound health when the policies were delivered, it was not proved that the insurance ever went into effect, and the motion to direct verdicts for the defendant should have been granted. Scharlach v. Pacific Mut. Life Ins. Co. (C. C. A.) 16 F.(2d) 245. Compare, Maryland Casualty Co. v. Crofford (C. C. A.) 55 F. (2d) 576; Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597.

It is claimed that the clause which provided that each policy should be incontestable after one year during the lifetime of the insured deprived the defendant of any right to contest its liability. The action was begun in February, 1930. The defendant answered in May, 1930. As we have seen, Greenbaum died on February 26, 1929. In this case the defendant began to contest its liability when its answer was filed. Killian v. Metropolitan Life Ins. Co., 251 N. Y. 44, 166 N. E. 798, 64 A. L. R. 956; Jensen v. Metropolitan Life Ins. Co., 251 N. Y. 336, 167 N. E. 462. That was more than a year after the policies took effect if they ever became effective as insurance contracts and, assuming that they did so take effect, more than a year after the insured died. The incontestability clause itself is not, perhaps, as well drawn as it might have been. And if there is any doubt as to its meaning it should be construed most strongly against the defendant who composed it. Gerka v. Fidelity & Casualty Co., 251 N. Y. 51, 167 N. E. 169; Mutual Life Ins. Co. of N. Y. v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 322, 48 S. Ct. 512, 72 L. Ed. 895. However, the period of incontestability was to begin "after one year during the lifetime of the Insured from date of issue," and that can within reason only mean that the one year from the date of issue must be a year which elapsed during the lifetime of the insured. As the insured did not live a year after the date of issue, the period of incontestability never began. Aetna Life Ins. Co. v. Kennedy (C. C. A.) 31 F.(2d) 971.

Because a new trial will be required, it is well to express our views on the burden of proof on the issue of sound health. There is authority to the effect that such a clause as these policies contained regarding the effective date of the insurance makes the question of sound health only a matter of defense, but that view seems to give too little force to the fact that the parties expressly agreed that no insurance should take effect until the policies were delivered and the first premiums paid while the proposed insured was in sound health. Regardless of what may be necessary in any particular case to prove sound health as of the decisive time either prima facie or ultimately, we think it is a condition precedent with the burden on the plaintiff to prove it by a preponderance of all the evidence in order to show that the defendant ever became bound as an insurer. New York Life Ins. Co. v. McCreary (C. C. A.) 60 F.(2d) 355; Person v. Aetna Life Ins. Co. (C. C. A.) 32 F.(2d) 459; Lee v. Prudential Life Ins. Co., 203 Mass. 299, 89 N. E. 529, 17 Ann. Cas. 236; Fondi v. Boston Mutual Life Ins. Co., 224 Mass. 6, 112 N. E. 612; Barker v. Metro-

politan *Life Ins. Co.*, 188 Mass. 542, 74 N. E. 945; *Mohr v. Prudential Ins. Co.*, 32 R. I. 177, 78 A. 554; Cooley's Briefs on Insurance (2d Ed.) Vol. 1, p. 693. Compare, *Drilling v. New York Life Ins. Co.*, 234 N. Y. 234, 137 N. E. 314.

Judgment reversed.