## SPAUNHORST v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.
### No. 10725.

Circuit Court of Appeals, Eighth Circuit.
March 9, 1937.

Walter A. Raymond, of Kansas City, Mo. (Fenton Hume and Homer A. Cope, both of Kansas City, Mo., on the brief), for appellant.

Kenneth E. Midgley, of Kansas City, Mo. (William C. Michaels, of Kansas City, Mo., Alexander & Green, of Kansas City, Mo., and Michaels, Blackmar, Newkirk, Eager & Swanson, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellant, as the beneficiary in a policy of accident insurance, issued by the appellee on the life of one Louis C. T. Spaunhorst, brought suit thereon to recover the sum of $5,000, on the theory that the conceded death of the insured therein had been caused by injuries accidentally incurred. More accurately speaking, the contract of insurance was against death from any cause, but in the event that death was caused by accident, as this word was defined and limited in the policy, double indemnity, to wit, $10,000 was to be paid to the beneficiary. The so-called principal sum of $5,000 has been paid and so it has passed out of the case.

The trial court sustained a demurrer to appellant's second amended petition; appellant refused to plead further; the court thereupon dismissed her suit, and she appealed in due time and form.

Since obviously the sole question is whether the action of the trial court, in holding the petition bad on demurrer, was correct, the facts fall within a narrow compass, and are all found among the averments of appellant's petition. This sole question is to be resolved by a consideration of whether the death of the insured was caused by an accident, acting within the time limited by the terms and language of the policy. As we read the brief of appellee, it concedes, tacitly at least, that the stabbing of the insured was an accident, and that if insured had died within ninety days after the fact, appellee would have been liable, and appellant could have recovered.

So many of the averments of the petition as are relevant to the issue thus raised read thus:

"Plaintiff further states that the provision in said policy relative death from accident is as follows, to-wit:

"Double Indemnity for Death from Accident.

"Upon receipt of due proof of the Insured's death from accident as defined below, occurring while this policy was in force and no premium hereunder in default, the Society agrees to increase the face amount to the amount stated on the first page hereof.

"Death from accident means death resulting solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means and ensuing within 90 days of such injuries, but does not include death resulting from or caused directly or indirectly by * * * disease or illness of any kind. * * *

Plaintiff further states that while said policy was in full force and effect and on the 27th day of September, 1933, the said Louis C. T. Spaunhorst was accidentally stabbed by a convict in the Oklahoma State Penitentiary at McAlester, while the said Louis C. T. Spaunhorst was engaged upon his duties at said penitentiary; that as a direct and sole result of said accidental stabbing, a low grade infection developed below the diaphragm and in about the region of said stab wound; that the said Louis C. T. Spaunhorst recovered from said stab wound and returned to work; that thereafter and within approximately four to six weeks prior to his death on January 3, 1934, the said low grade infection suddenly became virulent, causing an abscess in the abdomen, below the diaphragm and in and about the region of said stab wound, causing numerous adhesions in said region, thereby producing a suppurative pericarditis, as a direct and sole result of which the said Louis C. T. Spaunhorst died on the date aforesaid."

As already indicated, but a single alleged error is relied on for reversal. This is stated in numerous forms, of which a fairly typical one is:

"The court erred in holding that 'such injuries' within the terms of the policy referred to the original stabbing and not to the injuries caused by the subsequent sudden virulence of the low grade infection introduced by such stabbing, which said injuries occurred within less than ninety days of the death of the insured."

What is included in the coverage of the policy and pertinent here is, "death from accident," which, as defined in the policy, "means death resulting solely from bodily injuries caused directly * * * by external violent means, and ensuing within 90 days of such injuries." What inter alia is not included is, "death resulting from or caused directly or indirectly by * * * disease or illness of any kind."

█ As a foreword, it may be conceded that, as appellant contends, the language of a contract of insurance when ambiguous, or when reasonably open to two constructions is to be construed more favorably to the insured, than to the insurer. Aschenbrenner v. U. S. Fidelity & Guaranty Co., 292 U.S. 80, 54 S.Ct. 590, 78 L.Ed. 1137; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102. But it is not to every insurance policy that the above rule applies. It is to be applied only when the language of the policy in dispute "is reasonably open to two constructions."

█ The language of the contract of insurance here in dispute is that part above quoted, which limits the coverage of the policy to death from accident occurring within 90 days from the infliction of an injury. The policy by its language defines what is agreed to be an accident. It is, as so defined, an external, violent, and bodily injury, or hurt which directly and within 90 days thereafter causes the death of the insured. Here, the insured was accidentally, that is not intentionally, so far, at least as he was concerned, stabbed in the abdomen on September 27, 1933. Necessarily such a stab wound was a violent and external hurt or injury. It was apparent and obvious, because it was external. But conceding that this stab wound was an accident, that it was violent and external, and that as an indirect result of it insured's death was caused, it yet did not cause death within the 90 days after its infliction as the policy required. The policy says that there must be an accident, that by that accident an injury must be inflicted and that directly from such injury death must ensue within 90 days from such injury. But here the insured after he was stabbed "recovered from said stab wound and returned to work." The stab wound left as a residuum a low-grade infection. This low-grade infection became virulent some month or six weeks before the death of insured; caused an abscess in the heart sac, or pericardium, and a suppurative pericarditis ensued, from which on January 3, 1934, or 98 days after he was stabbed, insured died.

The contention of appellant is that the 90-day limit within which death must ensue in order to be within the coverage of the policy should date, under the language used in the policy, not from the day on which the stab wound was inflicted, but from the day on which the low-grade infection became virulent, which was only some 42 days before the insured died; that the word "injuries" as used in the policy refers not to the fact of stabbing, but to the fact that as a result of such stabbing a low-grade infection caused by it became virulent.

Obviously, the date selected is wholly arbitrary, and picked out to subserve the

necessity of the situation. For there was an accident, this accident caused an injury, this injury was at once external and apparent. Later it became internal, the infection involved the heart sac, a suppurative pericarditis followed, and as a result the insured died. It no doubt caused the death of insured, but it did so indirectly and not directly as the policy required, and not within 90 days as the policy provided. It cannot be said with accuracy that the stab wound was not an injury. Clearly it was, and the most that can be said of the unfortunate situation is that the injury was a continuing one, which resulted in death, but not in 90 days as the policy provided. So, we are not able to perceive that the language up for interpretation here was "reasonably open to two constructions." We think the construction urged upon us by appellant is strained and logically unreasonable.

The case of Wheeler v. Missouri Pacific Railway Co., 328 Mo. 888, 42 S.W.(2d) 579, and other cases involving a construction of the Missouri Workmen's Compensation Act (Mo.St.Ann. § 3299 et seq., p. 8229 et seq.), are urged by appellant as authorities for the contention that the word "injuries" does not refer to the date of the accident, but to the time at which the result of the accident becomes apparent. These cases are not in point. They rode off on two statutory provisions, in one of which a definition of what within the purview of the statute a compensable injury is, and the other fixing a period of limitation as to making a claim for such injury. Moreover, it was held in the Wheeler Case, supra, that since the injury there was apparent and compensable, and not latent, the claim should have been made within the statutory limitation, after the accident occurred. Scarcely can it be urged that a stab wound in the abdomen is not an apparent injury, nor can it be urged that it is a latent injury. We are not able to see even an analogy between the Wheeler Case, supra, and the situation presently in hand, and to the question here involved. For in the Wheeler Case, supra, a statute of limitations was involved, the case at bar involves the coverage of an insurance policy. Besides, in the Wheeler Case an applicable statute provided for compensation for latent or resultant injuries, and tolled the statute till the latter became apparent.

In principle and upon many facts, the instant case cannot be distinguished from the case of Kerns v. Aetna Life Insurance Co. (C.C.A.) 291 F. 289. There the insured, a physician, on November 12, 1919, accidentally swallowed a piece of metal solder, which pierced his oesophagus, finally passed therethrough, became incapsulated in the tissues adjacent thereto. He was quite ill for a time, but seemingly recovered fully and again for some months engaged actively in the practice of his profession. In March, 1920, an automobile in which he was riding became stalled in the snow. He got out to push it and in doing so slipped and fell. The incapsulated metal was dislodged by the shock of falling, infection ensued, and he died of an abscess, on April 19, 1920, precisely six months after the initial hurt was incurred. There as here the policy insured against death by accident, and provided for the payment to the beneficiary of the face amount of the policy in case of the death of the insured "resulting directly and independently of all other causes from bodily injuries, effected solely through external, violent and accidental means, in 90 days of such injury, whether with or without total disability, and in case of total disability, within 200 weeks of such injury." Since insured in the Kerns Case, supra, did not die within 90 days of his swallowing the piece of solder and since he did not suffer from total disability continuously from the time he swallowed this metal till his death, within 200 weeks after such injury, we held that the beneficiary therein could not recover, because the facts of the case were not within the coverage of the policy, which coverage was expressed therein in language differing not at all from that of the policy in the instant case.

In the Kerns Case, supra, at page 290 we said:

"This initial injury was concededly the remote cause of his death. But, before it became the proximate or direct cause thereof, it had by the lapse of time fallen into the category of a pre-existing disease or bodily infirmity, so far as the contract of insurance at least is concerned. Before it could in a physical sense become the cause of his death, it was necessary that the quiescence of this infirmity be disturbed. The slipping of assured, even if it is conceded that there is any competent evidence that it happened, could not, and, as it is tacitly conceded, did not, cause his

death, of itself alone. This slipping merely by the shock superinduced, disturbed the quiescence of the incapsulated metal, causing a recrudescence of infection, which brought about death."

In the Kerns Case, we repeat, as in the case at bar, the coverage was limited to an accidental death within 90 days from the happening of the injury. Again therein as herein, the "injury" is later referred to as "such injury." There as here the recrudescence of the infection in a virulent form occurred less than 90 days before death. It is not possible we are of opinion to find any controlling difference between the language used in the policy in the Kerns Case, supra, and the language used in the contract of insurance in the case at bar.

It results that this case should be affirmed and so we order.