[NOTE. See Case No. 3,375.]

## Case No. 3,375.

### CRAY v. HARTFORD FIRE INS. CO.

[1 Blatchf. 280; 1 Liv. Law Mag. 96.][1]

Circuit Court, D. Connecticut. April Term, 1848.

LIMITATION OF ACTIONS BY AGREEMENT—INSURANCE.

1. Where a policy of insurance provided that no action should be sustained against the insurer founded thereon, unless brought within twelve months after the cause of action should accrue, and that the lapse of time, in case of such suit, should be deemed conclusive evidence against the validity of the claim set up: *Held*, that a plea setting up such provision and the lapse of the time specified, in bar of an action on the policy, was a conclusive answer to the suit.

2. The provision is not against law, nor repugnant, nor impossible.

[Cited in Davidson v. Phoenix Ins. Co., Case No. 3,607; Riddlesbarger v. Hartford Ins. Co., 7 Wall. (74 U. S.) 392; Home Ins. Co. v. Stanchfield, Case No. 6,660.]

3. The right to indemnity in case of loss, and the liability of the insurer therefor, do not, under such a provision, become invalid, unless the remedy is sought within the period limited. The stipulation goes to the right as well as to the remedy.

This was a bill in equity [by Scott Cray, receiver of the Ocmulgee Bank of Georgia] to recover the amount of a policy of insurance. The defendants pleaded in bar the following clause in the policy: "14th. It is expressly provided that no suit or action of any kind against said company, for the recovery of any claim upon, under or by virtue of this policy, shall be sustained in any court of law or chancery, unless said suit or action shall be commenced within the term of twelve months next after the cause of action shall accrue; and in case any such suit or action shall be commenced against said company, after the expiration, &c., the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim thereby so attempted to be enforced." The plea averred that the suit was not commenced within twelve months next after the cause of action accrued.

Roger S. Baldwin, for plaintiff.

1. The plea admits the policy, the loss and proofs, and that a right of action accrued more

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission. 1 Liv. Law Mag. 96, contains only a partial report.]

than twelve months before the suit was brought. It does not rely on the condition to disprove the existence of a right of action on the policy. It simply sets up as a bar the lapse of time since it accrued, as presenting a condition on which, by a prior agreement, it was in effect released before it accrued, the release to take effect a year after it should accrue. It is not a condition precedent to the accruing of a right of action, without the performance of which no right could exist. But it is an attempt by the company, in a court of equity, to avail themselves of a mere lapse of time, during which they were permitted by the indulgence of the plaintiff, to persist in a wrongful withholding of this right, to defeat a claim admitted to be just. The plea admits that, on the 1st of February, 1847, the plaintiff had a good cause of action and a just claim on the company. It sets up no subsequent act done by them to satisfy it, or by the plaintiff to release it; but claims that it has been released since it accrued, simply by the operation of the promise or agreement in the condition of the original policy. When that agreement was made, there was no breach of contract, no loss, no right of action, inchoate or otherwise. That agreement or proviso is not in any manner connected with the accruing of a right of action, or with the claim of the assured to an indemnity. It had no effect on the obligation assumed by the company, which was to pay absolutely. The policy contained stipulations which the parties must then have contemplated that the company would fulfil, on the loss accruing and the proof being made, that is, on the happening of the very things' which here appear and are admitted. Every thing which the plaintiff was required to do before it became the duty of the defendants to pay is admitted to have been done. On their refusal to fulfil, a right of action accrued. No act of the assured could make the duty of the company and the right of action more perfect and complete. What then has operated to excuse the company from performance, or to exonerate them from liability to be sued? Nothing but their own neglect of duty, their own persistence in admitted wrong for a year. It is claimed that, in consequence of that continued wrong, the prior agreement operates as a release. But the condition does not, upon the face of it, purport to release the company from its obligation. There is no consideration for such a release, no mutuality; there was nothing for such a release to operate upon when it was made, and, if there had been, public policy would forbid it. For if such an agreement would be valid in a policy, it may equally well be introduced into all contracts. The consideration stipulated on the part of the bank was a contract of indemnity against loss, to be paid in sixty days after proof. For that the premium was paid. A refusal to pay did not enter legitimately into the view of the parties. The redress for the non-per-

formance of a contract, like the redress for every other injury, is given, not by the act of the parties, but by that of the government. The parties were not stipulating for a right of action, but for a voluntary payment on proof of loss. A right of action is furnished in fulfilment of a duty which the state owes its citizens, to enforce justice. The agreements of the parties have respect to the creation of rights—not rights of action, but rights to the faithful performance of the things stipulated, without action. The action is given by the government to redress a private wrong; and it would be obviously against public policy to allow parties to make and be bound by stipulations not to resort to the appointed tribunals for redress, or to limit the time for such an appeal against wrong to a shorter period than the law allows. The policy of the law is to afford to every citizen such means of redress as shall prevent the necessity of other resort, and it fixes for itself the limit of delay, in view of the many causes which may prevent an immediate resort to its tribunals.

2. Even in courts of law such restrictions on the right of suit, where a cause of action exists, are not allowed to have effect. Thus if a man grant a rent-charge, with clause of distress, and expressly provide that the distress shall be irreplevisable, a court of law will nevertheless allow the party whose goods are distrained to replevy them. For though, in case of a rent-charge, the distress is given by agreement of the party merely, yet, wherever there is a distress, the common law gives a right of replevin. Hence, Lord Coke says (Co. Litt. 145b) that though one grant a rent with a clause of distress, and grant farther that the distresses taken shall be irreplevisable, yet they may be replevied, for such a restraint is against the nature of a distress, and no private man can alter the common course of law. See, also, Coote, Mortg. 22. And the law would be the same if the grant had been that they should be irreplevisable after a certain time. Such too is the case of a mortgage, when it is once established. "Once a mortgage always a mortgage." "An estate cannot at one time be a mortgage and at another time cease to be so, by one and the same deed; and a mortgage can no more be irredeemable, than a distress for a rent-charge can be irrepleviable. The law itself will control that express agreement of the party; and, by the same reason, equity will let a man loose from his agreement, and will against his agreement admit him to redeem a mortgage." Howard v. Harris, 1 Vern. 192. If a man should stipulate in his mortgage deed that it should be irredeemable if he did not bring a bill to redeem within six months after forfeiture, such an agreement would have no effect in impairing his rights. So, if the parties covenant at the time of making their contract, whether it be a policy or any other contract, that in case of dispute no suit shall be brought, but resort shall be had

to arbitration, such a stipulation will not be regarded by a court either of law or of equity. Kyd, Awards, 14; Street v. Rigby, 6 Ves. 815; Kill v. Hollister, 1 Wils. 129; Thompson v. Charnock, 8 Term R. 139; Wellington v. Mackintosh, 2 Atk. 569; Tattersall v. Groote, 2 Bos. & P. 131; Astley v. Weldon, Id. 346; Goldstone v. Osborn, 2 Car. & P. 551. In regard to those stipulations a compliance with which is a condition precedent to a cause of action arising or a duty being created, the case is different. Whenever the right and duty are once ascertained and are of instant obligation, all agreements in the contract itself beforehand to forego the aid of the courts to enforce them, are against policy and void. They tend to encourage the party bound, to refuse to perform. Suppose the party has bound himself, in case of violation, to sue in a particular court, for example a state court; would that oust this court of jurisdiction? An action supposes the right to be complete before it is instituted, and the defendant to be wrongfully violating that right. Just so long as the wrong continues, short of the limitation fixed by law, the courts are, from motives of public policy, open to redress it. It is obviously the policy of the law to promote, as it is its duty to compel, the faithful performance of contracts. But, if the principal urged here shall be established as law, there will be a temptation to delay the performance of every contract. If an agreement to delay for a year is valid, it is equally so for a month or a day, or even to forego suit altogether; and there is here no saving clause for accident or incompetency.

3. This contract is not set up as an executory agreement, for the non-performance of which damages are asked, or as an agreement to affect the right to indemnity; but the defendants are seeking to use it as a release. But a release or grant cannot be made of that which has no existence at the time of the grant and subsequently arises. It was not intended here to release the contract, so as to prevent a right of action from accruing. The plea admits that a good cause of action arose subsequently to the making of the policy and the agreement relied on; and that the cause of action was perfect, and unaffected by the previous stipulation, for a year after it accrued. It is not pretended that there has been any payment, accord, or other act, by which the right of action has been since extinguished. It exists then, unless there was, in effect, a release before it accrued, to take effect a year afterwards. But a cause of action cannot be released before it accrues, in any other way than by a release of the obligation of the contract by force of which it would otherwise accrue. It cannot be released by an instrument which contemplates that it will subsequently accrue, and yet continue as a perfect obligation. A right to an indemnity by the insured, and an obligation to pay that indemnity, were the objects of

the stipulation; not a right of action, which could only arise by a wrongful refusal by the insurer to perform that which was the object of the stipulation. A contract to release the right of action and not the obligation of the contract or the duty to perform it, or a contract to change the rules of evidence in case the contract should be violated and a suit be brought, could not be regarded by the court. A nomine poenae waiting upon a rent cannot be released till the rent is behind, as the non-payment of the rent makes the nomine poenae a duty. Yelv. 215. But the rent might be released and of course the nomine poenae would go with it. A party cannot release all causes of action, that may arise or accrue after the execution of the release. But he may release the covenant or policy, and then no cause of action can arise. That, however, is not done here. A release, to be effectual, if made before the cause of action accrues, must prevent it from ever accruing. If, notwithstanding the instrument claimed to be a release, a cause of action does afterwards accrue, that cause of action can only be released by some subsequent act of the party or of the law. There is no other known way of extinguishing a cause of action once accrued. And the parties can no more change, by prior agreement, the rules of evidence, by which the courts will be governed, than they can release a right of action which shall subsequently accrue by reason of a wrong subsequently done. Suppose that, at the time of giving a mortgage, there should be a stipulation that if it were not redeemed in six months it should be evidence of no right to redeem; would such a stipulation avail to prevent a redemption?

4. But we are in a court of equity, pursuing an equitable claim. The cause of action accrued to the plaintiff by the furnishing of the proofs in 1845. It is pursued in behalf of the creditors of the bank, by the receiver to whom it accrued. What has he done to release this equitable right, which was perfect in him from the time he exhibited the proofs? Nothing. The Ocmulgee Bank, which alone could bring an action at law on the policy, had become incapable. Its assets were transferred to a person acting under a public appointment, to whom a cause of action in equity subsequently accrued. To bar that right by reason of the mere lapse of time, through the persistence in a wrong too long indulged, would be manifestly inequitable and unjust.

5. But it is the every day practice of a court of equity to relieve against forfeitures by lapse of time; especially where it can see that it has not been of the slightest injury to the party seeking to avail himself of it. More especially will this be the case when that party is himself in the wrong. Against a condition subsequent, or a forfeiture sought to be enforced against equity under a pre-existing agreement, equity will, on its ordinary principles, relieve. As to conditions

subsequent, says Maddock, "where the court can in any case compensate the party in damages for the 'non-precise performance of the condition,' equity will relieve." 1 Madd. Ch. 36. It will never allow an improvident contract, before action accrued, to deprive it of jurisdiction.

Isaac Toucey and Thomas C. Perkins, for defendants.

NELSON, Circuit Justice. 1. The fourteenth condition of the policy, providing that no action shall be sustained against the company founded thereon, unless brought within the term of twelve months after the cause of action shall have accrued, affords, in our judgment, a conclusive answer to the bill of complaint. The bringing of the suit within this period is made a condition subsequent to the right of the insured to recover the loss. The policy was entered into and the risk assumed with express reference to this among other conditions; all which must, therefore, be regarded in expounding the rights and obligations of the parties under the contract. It stands upon the footing of the other conditions to be found therein; such as giving notice of the loss, delivering a particular account of the same, properly verified, producing books of account, &c. It is not against law, nor repugnant, nor impossible, and may be very material to the rights and interests of the party in whose favor it is made. We have been referred to no statute or principle of the common law forbidding such a condition. Originally, there was no limitation to actions. Blackmore v. Tidderley, 2 Ld. Raym. 1099; People v. Gilbert, 18 Johns. 228; Perham v. Raynal, 2 Bing. 306; Wilk. Lim. 2 et seq. The act of 21 Jac. I. (1623) the first general statute on the subject, provided that suits should be brought within six years after the cause of action had accrued, "and not after." But there is nothing in this act forbidding a limitation short of this period, by the stipulation of the parties. It only prohibits the suit after the six years. The common law gave to the party an indefinite time to bring an action. The act simply limited the time to the given period. There might be some force in the argument, that an agreement to extend the time beyond the statutory limit was against law and void, but there is none as respects a limitation short of it. Even in the former case it has been held, notwithstanding the positive terms of the act, namely, that suits should be brought within six years and not after, that the benefit of the provision may be waived by the act of the parties. Wilk. Lim. 52, 53, and cases there cited. This may be done during the running of the statute, or after the limitation has attached. Why not, then, by a stipulation in the contract itself? And, why may not the limitation be restrained in the same way? We cannot doubt that, before St. 21 Jac. I. it was competent for the parties, by a clause

in their contract, to limit the time within which, in case of a breach, an action should be brought. As the period was then indefinite, there could be no limit, unless it was thus fixed. There is nothing in the act, necessarily or by fair construction, taking away this right. The case of an agreement to refer to arbitration is not analogous. That is deemed inoperative on the ground of an attempt to oust the jurisdiction of the courts. Kill v. Hollister, 1 Wils. 129; Halfhide v. Fenning, 2 Brown, Ch. 336; Wats. Arb. 4, 7, 8. And even that case was at first a matter of contradictory decision. The same may be said of the case referred to of an agreement that a distress for a rent-charge shall be irreplevisable. It is an attempt to take away all remedy for a right that is regarded as incident to the distress, and inseparable from it. Co. Litt. 145b, 282b; Brac. lib. 4, p. 233a, 233b. These observations are also applicable to the case of an agreement that a mortgage shall be irredeemable. In the case before us there is no attempt to oust the jurisdiction of the courts or to take from the party his appropriate remedy. The condition simply requires vigilance in the pursuit of the remedy, beyond the requirement of the law. The jurisdiction of the court to administer justice in the given case is not interfered with.

2. But the true ground, we are inclined to think, upon which the clause rests and is maintainable, is, that by the contract of the parties, the right to indemnity in case of loss, and the liability of the company therefor, do not become absolute, unless the remedy is sought within the year. The stipulation goes to the right as well as to the remedy. Indeed the time within which the remedy is to be enforced is prescribed for the purpose of reaching and regulating the rights of the insured under the contract. Although the condition is subsequent, it is, if lawful, as operative and binding as a condition precedent; and that it is lawful, as well as a very essential part of the contract, we cannot doubt. The clause contemplates a loss about which a controversy may arise between the insured and the company, and in respect to which the right to indemnity may be denied. The object was not to foreclose it and prevent a resort to the proper tribunal; but to compel a speedy resort, and a termination of the controversy, while the facts were fresh in the recollection of the parties and witnesses, and the proofs accessible. While it is not perceived to be at all injurious to the rights of the insured, it is manifestly beneficial to the company, who stand on the defensive and are obliged to await the movements of the adversary party. We are of opinion, therefore, that the plea is a good answer to the bill.

After this decision the bill was amended, by setting out reasons for the delay in bringing the suit, and the case was re-argued, but the reasons were held insufficient. Meantime the plaintiff died, and no receiver having been appointed in his place, the case has proceeded no further.

