ELIOT NATIONAL BANK *vs.* JOHN V. BEAL & another, administrators.

Suffolk.   March 16. — May 7, 1886.   FIELD, J., did not sit.   W. ALLEN & HOLMES, JJ., absent.

A bond, given for the faithful performance by C. of his duties as cashier of a bank, contained the condition "that no suit at law shall be brought or founded upon it, unless the same be commenced within the period of twelve months after the connection of the said C. with said bank, or his employment with said bank, shall have closed and been terminated." C. misappropriated the funds of the bank, and resigned his office; and an action was seasonably brought upon the bond. While this action was pending, the surety on the bond died, more than twelve months after C.'s employment by the bank had terminated. *Held,* that a new action could be maintained against the administrator of his estate.

CONTRACT, against the administrators *de bonis non*, with the will annexed, of the estate of Moses C. Beal, upon a bond executed by Royal B. Conant as principal, and by the defendants' intestate as surety, given for the faithful performance by Conant of his duties as cashier of the plaintiff bank; and the last condition of which was, "that no suit at law shall be brought or founded upon it, unless the same be commenced within the period of twelve months after the connection of the said Royal B. Conant with said bank, or his employment with said bank, shall have closed and been terminated." Writ dated August 1, 1883. Trial in this court, before *Holmes*, J., who reported for the consideration of the full court the following case:

It was stated in the opening, and the plaintiff proposed to prove, that Royal B. Conant was appointed cashier, and was required to, and did, give the bond in suit; that he continued to act as cashier, under said appointment, until July 31, 1878, when he was discovered to be a defaulter, and to have misappropriated to his own use, of the funds of the bank, the sum of about $68,000, and was asked to, and did, resign; that his

resignation was accepted, and at that time his connection with, and his employment by, the bank were closed and terminated.

A suit was brought at once upon said bond, on December 23, 1878, in the Superior Court, against both the principal and surety, and while said suit was pending in court and being heard before an auditor, namely, on October 29, 1881, Moses C. Beal, the surety, died, testate, the other defendant surviving. The estate of said Beal has not been represented insolvent. His will was contested, but was finally admitted to probate, and the defendants in the present action were appointed and qualified as administrators, with the will annexed, on May 24, 1882. The original suit is still going on as against the surviving defendant.

The defendants contended that the action could not be maintained, because of the last condition in said bond.

The judge so ruled, and directed a verdict for the defendants.

If the ruling was right, judgment was to be entered on the verdict; otherwise, the verdict to be set aside and the case to stand for trial.

*I. R. Clark*, for the plaintiff.

*W. Gaston & C. L. B. Whitney*, for the defendants.

C. ALLEN, J. The defendants rely upon the concluding condition of the bond, "that no suit at law shall be brought or founded upon it, unless the same be commenced within the period of twelve months after the connection of the said Royal B. Conant with said bank, or his employment with said bank, shall have closed and been terminated," as presenting an insuperable bar to the maintenance of the present action. But we do not think such is the just conclusion.

In the first place, a distinction has sometimes been made between the effect of a condition and of a contract; and it is said that if a condition, which was possible at the time of entering into it, becomes impossible by the act of God, the necessity of performing it is excused. 2 Shep. Touchst. 382. Bac. Abr. Conditions, Q. *Sparrow* v. *Sowgate*, W. Jones, 29. Upon this technical ground, it might perhaps be held that, since the parties have chosen to put their undertaking in this form, the defence fails.

But it is better to look at the case more broadly. Treating this as a mere contract, the parties agree that no suit shall be

brought or founded upon it, unless the same be commenced within twelve months. We have no doubt that such a provision is valid. *Amesbury* v. *Bowditch Ins. Co.* 6 Gray, 596, 604. *Fullam* v. *New York Ins. Co.* 7 Gray, 61. *Riddlesbarger* v. *Hartford Ins. Co.* 7 Wall. 386. But the question is what it means. It is not a question whether the defendants can be excused from the terms of a contract, but what is the true construction of the contract. The letter of the bond, if that alone is looked at, says that no suit shall be brought upon it unless within twelve months. But, as was said in *Mill Dam Foundery* v. *Hovey*, 21 Pick. 417, 441, 442, "It would not always conform to the intent of the parties to construe every stipulation literally, when implied qualifications and exceptions are obviously necessary to carry into effect the intentions of the parties." And again, "Where a stipulation is made in general terms, it is to be construed with such implied exceptions and qualifications as necessarily grow out of the subject matter."

In the present case, it cannot be supposed that the parties intended to cut off entirely all remedy upon the bond, if upon breach the bank should use all possible means to enforce its rights. "The object was not to foreclose it and prevent a resort to the proper tribunal; but to compel a speedy resort." *Cray* v. *Hartford Ins. Co.* 1 Blatchf. 280. The obligors sought to insure themselves against injurious delay on the part of the obligee. It is as if they had said, "We will be bound provided you sue us within twelve months, and not otherwise." In other words, it is assumed, as an implied element of the contract, that a suit shall not be rendered impossible by reason of the death of the obligors. If such death were the result of the voluntary act of an obligor, by suicide, it would hardly be contended that the right of the obligee could be defeated in that way. One cannot himself put it out of the power of the other party to comply with a stipulation, and then avail himself of the non-compliance. *Frazier* v. *Cushman*, 12 Mass. 277. *Clapp* v. *Thomas*, 7 Allen, 188. *United States* v. *Peck*, 102 U. S. 64. *Beswick* v. *Swindells*, 3 Ad. & El. 868, 883. 2 Chit. Con. (11th Am. ed.) 1079. Certainly, in such case, a literal construction should not be put upon the stipulation, but an implied exception should be incorporated into it. So, where a stipulation or duty

in favor of another party can only be performed in his presence, it is an implied element of the obligation that he shall be present where he can be found to receive the performance; and, if he is absent, the obligation does not exist. See *Williams* v. *Bank of United States*, 2 Pet. 96. In the present case, a suit against both obligors was seasonably begun, but, as to the surety, it was defeated by his death, so that, in order to hold his estate, it was necessary to begin anew. *New Haven & Northampton Co.* v. *Hayden*, 119 Mass. 361. The defence, in principle, stands the same as it would if the surety had died within the year, and before action brought. Although, in such case, his death might not be his own voluntary act, yet it would be an event happening to him for which the bank was in no way responsible, and which would make it impossible for him or his estate to be reached by legal process within the year, although the bank might be ready and anxious to proceed at once. Now it may fairly be said that the stipulation goes on the assumption that the bank shall only be bound by some neglect, or inability, or failure, on its own part, in respect to the contemplated action; and that both parties assumed that the obligors, in case of breach, should keep themselves in readiness to be sued, and, being ready, should not be prejudiced by any delay from any other cause whatever. But if, by reason of death, neither they nor their legal representatives could be sued within the year, the effect upon the rights of the parties is the same as if they, by a voluntary act, had prevented the bank from commencing an action. Ordinarily, it is not to be deemed that a party undertakes to contract against such a contingency as that. Of course, an agreement might be so framed as to include this contingency also. But, looking at the bond now before us, we do not think it is within the meaning of the words used, that the plaintiff must lose its rights by the occurrence of this event to the surety, which made it impossible to bring an effectual suit upon the bond as against him or his estate within twelve months. On the other hand, the meaning is not different from that which the condition would bear if the words were, " No suit at law against us shall be brought or founded upon it, unless," &c.; in which case it would be obvious that the contracting parties both assumed that the obligors would remain in a condition to be sued.

This construction of the stipulation is quite in line with numerous well-considered decisions. In *Taylor* v. *Caldwell*, 3 B. & S. 826, 836, 839, there is a full and clear exposition by Blackburn, J., of the grounds on which it rests. He says that, in certain cases, "from the nature of the contract, there is an implied condition of the continued existence of the life of the contractor;" and he sums up the doctrine as follows: "The principle seems to us to be, that, in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance." See also *Wells* v. *Calnan*, 107 Mass. 514, where *Taylor* v. *Caldwell* is referred to; *Appleby* v. *Meyers*, L. R. 1 C. P. 615; 2 C. P. 651; *Boast* v. *Firth*, L. R. 4 C. P. 1; *Robinson* v. *Davison*, L. R. 6 Ex. 269; *Howell* v. *Coupland*, L. R. 9 Q. B. 462; *The Tornado*, 108 U. S. 342, 351; *Semmes* v. *Hartford Ins. Co.* 13 Wall. 158; *Van Buskirk* v. *Roberts*, 31 N. Y. 661, 675; *Peoria Ins. Co.* v. *Hall*, 12 Mich. 202; *Lovering* v. *Buck Mountain Coal Co.* 54 Penn. St. 291; *Walker* v. *Tucker*, 70 Ill. 527.

In other cases, distinguishable from the present, a stipulation much resembling that which we have considered has been held to bar an action brought after the expiration of the limited time, on the ground that the contingency which prevented the seasonable commencement of the action must be deemed to have been within the contemplation of the parties, and the obligee must be bound by his contract. *Riddlesbarger* v. *Hartford Ins. Co. ubi supra.* *Wilson* v. *Ætna Ins. Co.* 27 Vt. 99. *Brown* v. *Hartford Ins. Co.* 7 R. I. 301. In each of these cases, the failure of the original suit did not spring from any inability of the defendants to be sued, and the question which we decide did not arise.

The present decision rests on the ground that the stipulation, though absolute in its literal terms, includes an implied assumption that the obligors would remain in condition to be sued.

*Verdict set aside.*