MAX L. TANENBAUM, PLAINTIFF-RESPONDENT, v. RICHARD S. FRANCISCO, INDIVIDUALLY, ETC., ET AL., DEFENDANTS-APPELLANTS.

Argued October 26, 1932—Decided May 15, 1933.

For the appellants, *Dougal Herr.*

For the respondent, *Lionel P. Kristeller.*

The opinion of the court was delivered by

HETFIELD, J. This suit was instituted in the Supreme Court to recover money alleged to have been paid as a deposit on account of the purchase price of real property, by reason of the appellant's refusal to perform their part of a contract entered into by them with the Recreation Development Corporation on June 11th, 1924, providing for the conveyance of approximately one hundred and fifty-seven acres of land in Caldwell, for the sum of $75,000. The agreement called for a payment of $500 on the execution thereof, $2,000 on December 11th, 1924; $2,500 on June 11th, 1925; $5,000 on December 11th, 1925, and $10,000 on June 11th, 1926, when deed was to be delivered, and the balance of $55,000 was to be represented by a purchase-money bond and mortgage. The vendee had the right to immediate possession, for the purpose of constructing golf links, tennis courts, and a clubhouse, and was limited to such purposes until the delivery of the deed. The first two installments were paid when due, but the payments of the third and fourth were extended to January 2d, 1926, at which time an agreement was entered into between the parties, further extending the time to March 1st of that year, and other extensions were made to the Recreation Development Corporation to April 20th, 1926. On January 2d, 1926, the same day that the written extension agreement was entered into, the Recreation Development Corporation contracted with the American Plaster Drill Company, to sell the land in question for $130,000, and a deposit of $7,000 was made by the vendee to the Development Corporation on that date. On January 4th, 1926, or two days after the Development Corporation entered into the sales agreement with the Drill Company, it assigned all its rights in the original contract with the appellants to the same company; and on July 17th, 1931, the Drill Company assigned all

of its right, title and interest in the transaction to the respondent, who instituted the present suit. The complaint alleges that at the time the deposit of $7,000 was paid by the Drill Company to the Development Corporation, it was forthwith delivered and paid to the appellants, on account of the purchase price, which, together with the first two installments, represented a total payment to the vendors of $9,500; and it is further alleged, that on April 20th, 1926, and at all times thereafter, the Drill Company as assignee of the Development Corporation, tendered itself ready and willing to pay the balance of the consideration money, pursuant to the terms of the agreement, but that the defendants refused and still refuse to deliver their deed for the premises, as provided in the contract, although the Drill Company in all respects had fulfilled its part. The appellants' answer, in substance, denied all the material averments in the complaint, and set up five separate defenses. The Circuit Court judge, sitting as a Supreme Court commissioner, on motion struck out the denials contained in the answer and the third defense, as sham, and the remaining defenses, as frivolous. Judgment was entered accordingly, from which this appeal is taken.

In our opinion, this action of the court below was erroneous, as the answer and the affidavits in support thereof, were sufficient to entitle the appellants to defend. The second defense, which the trial court struck as frivolous, alleges, in effect, that the appellants were prevented from performing the contract in accordance with its terms, by reason of the fraudulent conduct of one Donaldson, the incorporator of the Recreation Development Corporation; and in support thereof, refers to an opinion rendered by this court, in the case of *American Plaster Drill Co.* v. *William H. Francisco,* 108 *N. J. Eq.* 323. It appears that the Drill Company, after it had acquired all the rights of the Development Corporation, in its contract with the appellants, instituted suit in the Court of Chancery, seeking the specific performance of said contract. This court, in the case cited by the appellants, reversed the Court of Chancery, and

directed that the bill be dismissed; and in an opinion delivered by Mr. Justice Lloyd, found that the present appellants, without fault of their own, were unable to comply with the terms of the sales agreement, in that one Joseph W. Donaldson, who controlled the Development Corporation, had by his fraudulent conduct, created a condition making it impossible for the appellants to convey the property free and clear of all encumbrances. The fraudulent actions of the original vendee are clearly set forth in the opinion, which reads in part:

"The moving spirit in the whole transaction and substantially the only stockholder in the Development Corporation was Joseph W. Donaldson. That corporation was organized on the same day that the agreement was made. A month later Donaldson caused another corporation to be organized under the general corporation laws and named the Ferncliff Golf and Country Club, Incorporated, and in this also he was substantially the only stockholder. The golf club was formed to establish an association of members as a golf and country club, and to it a lease was made of the property by the Development Corporation for a term of twenty years at the yearly rental of $15,000. Donaldson then had the golf club adopt by-laws of its own and also adopt other by-laws 'for the association of members of Ferncliff Golf and Country Club,' the first section of the by-laws concerning the latter reading that 'this association shall be known as the Ferncliff Golf and Country Club.' It is to be noted that the only distinction in the names of the incorporated and unincorporated bodies is that in the latter name the abbreviated word, 'Inc.,' is omitted."

"Immediately after these steps were taken Donaldson began a campaign to obtain members of the unincorporated association, and, as the learned vice-chancellor aptly says, the evidence clearly *indicated a campaign that might be more appropriately characterized as one to swindle the unwary.* The campaign was successful and resulted in the securing of large numbers of members who paid in approximately $75,000. The club was held out by Donaldson, rep-

resenting the Development Corporation, as the owner of the property. There seems to have been no suggestion apprising the members of the agreement of sale, of the lease to the club incorporated, of the sales agreement or its unpaid purchase price. Even the selection of the association name, identical with the corporate club name, leaving out only the letters 'Inc.,' were studiously made to deceive and defraud."

"In the early fall of 1925 the duped members discovered the deception that had been practiced and on their complaint Donaldson proceeded to make offers whereby the club might become the owner of the property. These offers came to nothing. In the January following, the Development Corporation agreed to sell the property to the complainant, the American Plaster Drill Company, subject to the lease to the golf club and to the rights of the members to use the premises, and on the same day assigned to it the sales contract with the Franciscos. Immediately following, Dryden, on behalf of the club members, filed a bill in chancery praying appointment of a receiver for the two companies, an accounting and an injunction restraining the Franciscos from disposing of the property, *and in this suit a lis pendens was filed.*"

"In April, 1926, the complainant below tendered itself ready to complete the purchase *provided the Franciscos would cause the lis pendens in the Dryden suit to be canceled.* This tender was not accepted. * * * The learned vice-chancellor who had before him the written record of the case (the proofs having been taken before another vice-chancellor, since deceased), found as a fact that the Development Corporation and the golf club were mere *alter egos* of Donaldson, and that with him they engaged in a scheme to defraud the members of the club. * * * Application for specific performance of a contract for the sale of lands is addressed to the discretion of the Court of Chancery, and he who comes into equity in such causes, of all others, must do so with clean hands. *It clearly appears in the present case that immediately upon acquiring the physical possession of the*

*lands in question, Donaldson and the Development Corporation began to use it in a scheme to deceive and defraud.* The complainant below stood in the shoes of the Development Corporation and acquired no higher or different rights than those possessed by it. * * * Thus far we have only dealt with the case as its facts appear upon the equitable side, and upon this phase alone we think the prayer of the bill should have been denied and the bill itself dismissed. *But it appears in the case that the tender of performance of the sale contract was coupled with a condition that the Franciscos remove the lis pendens which had been filed by the club members,* and the present bill demands the specific performance of each and every term of the agreement notwithstanding the *lis pendens.* The vendors had no control over the filing of the *lis pendens* or any present control of its removal. This being true, *the bill might well have been dismissed on the ground that the Franciscos, without fault of their own, could no longer fully comply with the terms of the sales agreement.*"

It is apparent, and so held by this court, that the Drill Company's offer to perform was made subject to the removal of the *lis pendens,* which had been filed solely because of the fraudulent conduct of the Development Corporation, making it impossible for the appellants to perform. It is well settled that whenever one party to a contract prevents the other from carrying out the terms thereof, the other party may treat the contract as broken, and abandon it, and is entitled to such profits as he would have received had there been a complete performance. Such abandonment is not a rescission of the contract, but is merely an acceptance of a situation created by the wrong-doer. *The Anvil Mining Co.* v. *Humble et al.,* 153 *U. S.* 540. The vendors were under a contractual duty to the Development Corporation, or its assignees, to convey the premises in question, free and clear of all encumbrances; and when a contract imposes such a duty on the vendor, there arises by necessary implication, an agreement on the part of the vendee to do no act which would render performance on the part of the vendor impos-

sible. This is under the doctrine that he who by mutual contract confers a right, or imposes a duty on another, impliedly agrees not to defeat that right, or make impossible the performance of that duty, by any affirmative acts of his own. *Eliot National Bank* v. *Beal,* 141 *Mass.* 566, 569. "Non-performance of a contract in accordance with its terms is excused if performance is prevented by the conduct of the adverse party. If the impossibility of performance arises directly or even indirectly from the acts of the promisee, it is a sufficient excuse for non-performance. This is upon the principle that he who prevents a thing may not avail himself of the non-performance which he has occasioned." 6 *R. C. L.* 1012; *Dolan* v. *Rodgers,* 149 *N. Y.* 489; *Vandegrift* v. *Cowles Engineering Co.,* 161 *N. Y.* 435. "The conduct of a party to a contract, which prevents or dispenses with performance by the adverse party, is equivalent to a waiver of the right to require performance." 13 *C. J.* 648. It appears that the Development Corporation willfully and wrongfully put an end to the contract, and prevented the appellants from carrying it out, which constituted a breach for which the appellants were entitled to damages; and the contract provides, among other things, that: "If default be made in the payment of the several sums aggregating twenty thousand ($20,000) dollars as above provided then this contract at the option of the parties of the first part is to be null and void and the parties of the first part may retain all sums paid on account of said purchase price as liquidated damages." We think that the second defense controverted material allegations in the complaint, and was sufficient to permit the appellants to defend.

The third defense, which was struck on the ground that it was sham, alleges that only $2,500 was paid on account of the purchase price; and that the $7,000 paid by the Drill Company to the Development Corporation, as a deposit on the sales contract, was not transferred or paid to the appellants as part of the deposit money. The affidavits filed on behalf of the appellants seem to support these allegations; and although the $7,000 check was endorsed by the

attorney for the appellants, the proofs show that pursuant to an understanding had by all parties concerned, the proceeds thereof were used for the purpose of paying debts incurred by the Development Corporation and the Golf Association, including taxes, which the Development Corporation was bound to pay under the contract; and the appellants received approximately $1,600 of said amount, to reimburse them for labor and horses furnished and used for the purpose of grading the land for golf links. The proofs submitted by the appellants further show that after the said debts were paid, there was nothing remaining with which to make a further payment on account of the contract; and the record indicates that on the date when the $7,000 was alleged to have been paid on the purchase price, the Development Corporation entered into an agreement with the appellants, which among other things extended the time in which to make the third payment, amounting to $2,500; and subsequently, there were two other extensions allowed for the same item, which would have been unnecessary if the $7,000 had been applied as alleged in the complaint. The record does not warrant a finding that this defense was false and made for the purpose of delay; and therefore it was sufficient to entitle the appellants to defend.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.