## NEW YORK LIFE INS. CO. v. PANAGIOTO-POULOS.

### No. 3127.

Circuit Court of Appeals, First Circuit.
May 23, 1936.

F. H. Nash, of Boston, Mass. (Louis H. Cooke, of New York City, and Philip Rhinelander, of Boston, Mass., on the brief), for appellant.

Harris J. Booras, of Boston, Mass. (John A. Edgerly, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is the same case in which we handed down an opinion October 29, 1935. See 80 F.(2d) 136. There the question before us was whether the defendant's answer set up an equitable defense. We held that it did not and sustained the action of the District Court in that regard, but vacated the judgment entered in favor of the plaintiff and remanded the case for further proceedings.

Thereafter, on December 6, 1935, the defendant filed in the court below a substituted answer, the only change from its prior answer, and material on this appeal, being the additional allegation that "the courts of Greece had and have no equity jurisdiction to decree cancellation of a life insurance policy, at the suit of the insurance company which issued the policy on the ground of fraud or misrepresentation by the applicant for the policy."

The plaintiff filed the same demurrer to this answer that he did to the previous one. The demurrer was sustained and, on April 17, 1936, judgment was entered in his favor for $5,619.38, and the defendant appealed.

All the facts appear in the former opinion except the addition to the answer above stated.

The incontestable clause of the policy reads:

"Incontestability—This policy shall be incontestable after two years from its date of issue except for non-payment of premium. * * *"

The beneficiary, Demetrios G. Panagiotopoulos, brought his action on the policy in the Massachusetts District Court on September 13, 1934. The two-year contestable right, by the terms of the policy, ended April 22, 1932, two years after the date of the policy, during which period no action, except an attempted cancellation of the policy and an offer to return the premiums paid, was taken by the defendant company. It claims, however, that because Kimon Panagiotopoulos, the insured, about three months after the policy was issued returned to Greece where he continued to reside until his death on November 20, 1930, and where the beneficiary has always resided, so that neither of them was subject to the jurisdiction of any court except those of the Republic of Greece, which "had and have no equity jurisdiction to decree cancellation of a life insurance policy, * * * on the ground of fraud or misrepresentation" in procuring the same, and, further, because of lack of reciprocity, that "no judgment obtained in the Greek courts by the defendant against the plaintiff would constitute a binding and final adjudication between said parties which would be recognized as such by this court or any other court of the United States," it could not make an effectual contest against its liability on the policy prior to the entry of the plaintiff's action in court; and that the two-year period of contestability should not include the time from the day the insured left the United States until this suit was entered in court.

It is to these claims that we address ourselves.

The contention of the company with which we will deal first is that contracts exempting a party from the consequences of his own fraud are contrary to public policy and void. New York Life Insurance Co. v. Gay (C.C.A.) 36 F.(2d) 634, 638; Reagan v. Union Mutual Life Ins. Co., 189 Mass. 555, 76 N.E. 217, 2 L.R.A.(N.S.) 821, 109 Am.St.Rep. 659, 4 Ann.Cas. 362; Strand v. Griffith (C.C.A.) 97 F. 854; Bridger v. Goldsmith, 143 N.Y. 424, 428, 38 N.E. 458; Pearson & Son v. Dublin Corp. [1907] A.C. 351; Williston, Contracts, § 811. Under this head, the company contends that an incontestable clause is invalid unless it secures to the company a definite period of reasonable duration after the issuance of a policy, in which it may investigate and discover the fraud and institute a contest (Reagan v. Union Life Ins. Co., supra; Great Western Life Ins. Co. v. Snavely [C.C.A.] 206 F. 20, 46 L.R.A.[N.S.] 1056;

Wright v. Mutual Benefit Life Ass'n, 118 N. Y. 237, 23 N.E. 186, 6 L.R.A. 731, 16 Am. St.Rep. 749; Massachusetts Benefit Ass'n v. Robinson, 104 Ga. 256, 271–273, 30 S.E. 918, 42 L.R.A. 261; Williston, Contracts, § 811), and that the plaintiff (the beneficiary) and the insured, by continuing to live in Greece rendered the policy incontestable during the greater portion of the first two years, and, if no further time is allowable in which to make a contest, such an agreement would in effect be one making the policy incontestable from its date or could be rendered incontestable from its date by the acts of the insured and beneficiary "and at their own election."

This probably would be true where the parties agreed that the two-year period should be shortened contrary to the terms of the statute, or conditions were introduced which necessarily had that effect. Here no such agreement was made or condition introduced, and if the insured delayed the contest by going where he could not be found or reached, it was not the contract that shortened the time, but the fact that process could not be served and a contest instituted. We therefore do not regard the contract as invalid on this ground.

■ The cases like Eliot National Bank v. Beal, 141 Mass. 566, 6 N.E. 742, cited by the defendant to sustain its proposition—that if one party to a contract, by his own conduct, renders it impossible for the other party to perform a stipulation in the contract, compliance is excused—are inapplicable. The right remaining in the company for two years to contest the policy did not create a duty on the part of the insured or the beneficiary in favor of the insurer. Neither of them was required by the contract to remain in the United States during the two-year period or to come here during that period in case the presence of either was desired for the service of process. If the company desired to make a contest, it was incumbent upon it to go where the insured or beneficiary was and do so, not for them to go to it. While the limitation on the contestable right embodied in the incontestable clause was a benefit to the insured and beneficiary, it was of a negative nature and imposed no duty on the insurer to contest. It simply limited its right to do so. The insurer

had no duty to perform which was prevented by the insured or beneficiary. It was understood by all parties that they could go their own ways, residing or traveling where they pleased. Nothing in the policy, either expressly or by implication, called upon them to appear within the United States to be served with process at any time within the two years. If their residence in Greece would have prevented contesting the policy as drawn, the insurer could easily have provided that the insured and beneficiary, either or both, should return here for service during the two years or have a representative here upon whom process could be served.

Nor do we stop to review the cases cited in which it is held or intimated that where the insured's estate is the beneficiary and there is delay in taking out administration, the two years might be extended by the time in which there was no party with whom to contest. We know of no way by which the insurer in a policy payable to the insured's estate and incontestable after two years could make provision for a party on whom service could be made under those circumstances. But we are not now called upon to decide that question. The facts there dealt with are not the facts in this case. Here there was a beneficiary who was alive during the two-year period but was living in Greece, a jurisdiction in which it is claimed no contest could have been made. As has already been pointed out, this could have been foreseen and provided against in the policy by designating a local agent on whom service could have been had or requiring the beneficiary to come here within the two-year period; and to now allow an extension of over two years more in which to contest would be in violation of the provision of the contract that at the end of two years the policy would be incontestable.

■ Furthermore the statute of Massachusetts, where this policy was issued, authorized the company to insert in the policy an incontestable clause, other than the one it did, providing that the policy "shall be incontestable after it has been *in force during the lifetime of the insured* for a period of two years." (Italics supplied.) Had it made use of this provision of the Massachusetts statute in the policy or either of the suggestions above stated, instead of the one it did, the company would

have been fully protected. See Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102. Having failed to adopt any of these methods to protect itself against a possible happening that it had reason to anticipate, it cannot now complain or ask the court to amend its contract.

The defendant further contends that as the plaintiff by his demurrer has admitted the allegation in its answer that "the courts of Greece had and have no equity jurisdiction to decree cancellation of an insurance policy" on the ground of fraud in its procurement—it was deprived of making a contest there within the two-year period and therefore it is entitled to extension of time for so doing; that a "contest" means a contest in court; and that if no court in Greece had equity jurisdiction to cancel a policy for fraud, it could not. make à contest there. This proposition assumes that if the courts of Greece are without equity jurisdiction to cancel or annul contracts for fraud, they have no powers, under the civil law there prevailing, for the accomplishment of the same purpose. This assumption cannot be indulged, and it not being alleged that the Greek courts are without power in a proper proceeding, though not in equity, to annul contracts for fraud, the plea is defective and does not show that no contest could have been begun in Greece to cancel or annul the policy. Furthermore, we know that, under the law of Spain, its civil code provides for the annulment of contracts for fraud (Civil Code of Spain [1889] c. 6, articles 1300–1314; Civil Code of Puerto Rico, c. 6, §§ 1267–1281 (Rev. St.&Codes 1913, §§ 4373–4387) and that that is the method generally prevailing in civil law countries.

What effect such a determination would have in our courts is another matter. It would be prima facie valid and evidently could be reviewed and sustained or set aside depending upon the nature of the evidence and whether the result was or was not in violation of our laws. Hilton v. Guyot, 159 U.S. 113, 226, 16 S.Ct. 139, 40 L.Ed. 95. Such a review, however, would be not a new contest, but a continuation of the contest begun in Greece within the two-year period.

For these reasons, the defendant's answer is not regarded as stating a valid defense and the judgment of the court below will be affirmed.

The judgment of the District Court is affirmed, with costs to the appellee in both courts.