**Rose G. ANDERSON, Plaintiff,**

**v.**

**EDUCATIONAL PUBLISHERS, Incorporated, a corporation, also doing business under the trade name of Educational Test Bureau, and County School and Office Supply Co., and Ruth Kuhlmann, Defendants.**

**Civ. No. 3208.**

United States District Court
**D.** Minnesota, Fourth Division.
Oct. 17, 1950.

Benedict Deinard, Minneapolis, Minn. (Leonard, Street & Deinard, Minneapolis, Minn., of counsel), appeared in behalf of the plaintiff.

T. O. Streissguth and Streissguth, Berens & Rodenberg, New Ulm, Minn., and O. S. Vesta, Arlington, Minn., appeared in behalf of defendant Educational Publishers, Incorporated.

Cleon Headley, St. Paul, Minn. (Morgan, Chase, Headley & Hoshour, St. Paul, Minn., of counsel), appeared in behalf of defendant Ruth Kuhlmann.

NORDBYE, Chief Judge.

The plaintiff and the late Dr. Frederick Kuhlmann, Sr., developed and revised the Kuhlmann-Anderson Intelligence Test and ancillary material required for its administration. As of January 2, 1937, they contracted with the defendant corporation, hereinafter sometimes called "the publisher" or "E. T. B.", for publication of the tests and materials throughout the United States. Paragraphs II and VII of the contract provided,

"II. That the publisher shall have the sole right to publish said intelligence tests * * * for a period of five years ending January second, 1942, * * *. Upon the expiration of said period of five years this agreement shall remain in force from year to year unless terminated either by the authors or by the publisher after having previously given notice in writing one year previous to expiration of said five year period or previous to expiration of any subsequent year."

"VII. In the event of disability or death of either of the authors, * * * the living author shall not terminate this agreement except with the written permission of the executor of the estate of the other author."

Royalties and other matters also were covered by the contract. Dr. Kuhlmann died intestate on April 19, 1941, and he was survived by his wife, Ruth Kuhlmann, one of the defendants herein, and by his son, Frederick Kuhlmann, Jr., an adult person, who is not a party to this action. They were his only heirs. His estate never has been probated.

When Dr. Kuhlmann died, he left unfinished another intelligence test which may be referred to as the "Kuhlmann Group Tests of Intelligence." And on October 16, 1941, approximately six months after Dr. Kuhlmann's death, the defendant Ruth Kuhlmann contracted with E. T. B. for publication, development, and completion by E. T. B. of the Kuhlmann Group Tests of Intelligence. She received a consideration therefor. In that contract and a subsequent modification thereof dated July 20, 1945, she covenanted not to cancel the Kuhlmann-Anderson contract between the publisher, her husband, and plaintiff until at least July 20, 1965. Plaintiff herein was not a party to this contract between Mrs. Kuhlmann and E. T. B., and plaintiff now desires to cancel the Kuhlmann-Anderson contract with E. T. B. She has given a year's written notice of termination of the contract to that corporation and contends that the contract will terminate on December 31, 1950. The defendant corporation contends, however, that the notice given by Miss Anderson was not effective because neither the executor or administrator of Dr. Kuhlmann's estate nor the heirs of Dr. Kuhlmann were parties to the cancellation as required by the contract. Plaintiff now brings this action for a declaratory judgment of her individual right to cancel the Kuhlmann-Anderson contract with the defendant corporation.

In determining plaintiff's right to cancel the contract alone, several matters must be recognized. Dr. Kuhlmann and plaintiff were co-owners of the copyright to the Kuhlmann-Anderson tests and material. They owned it jointly. And their contract with the defendant corporation contemplated that they could act only jointly in cancelling that contract. Paragraph II of the contract provides for cancellation by the "authors". The preamble of the contract defines the term "authors" as meaning Dr. Kuhlmann and Miss Anderson. So by the terms of the contract, plaintiff and Dr. Kuhlmann owed to each other and to the publisher the duty not to cancel the contract except together. All parties to the contract were entitled to a joint cancellation by the authors. Nothing in the contract or any principle advanced by either party shows that the joint nature of the authors' rights would terminate and become several upon the death of one of the authors, or that the rights and duties of a joint cancellation by the authors ceased upon the death of one of the authors. The requirement that the deceased author's executor or administrator consent to the cancellation after the author's death indicates that the authors' rights of cancellation were to continue as joint rights after the death of one of them. Unless equitable principles advanced by plaintiff permit her to cancel alone, therefore, the contract cancellation must be a joint one by the surviving author and the person or persons authorized under the contract or law to represent Dr. Kuhlmann's interest.

Mrs. Kuhlmann and Frederick Kuhlmann, Jr., acquired Dr. Kuhlmann's interest and rights, for they are his heirs. Under the Minnesota law, the heirs of a deceased person whose estate has not been probated succeed to the deceased's personalty. Holtan v. Fischer, 1944, 218 Minn. 81, 15 N.W.2d 206. Dr. Kuhlmann's interest in the Kuhlmann-Anderson contract with the defendant corporation was personalty, and his estate never was probated. Consequently, Mrs. Kuhlmann and Frederick Kuhlmann, Jr., now stand in the place of Dr. Kuhlmann, and plaintiff owes to them the duties which she owed to Dr. Kuhlmann during his lifetime. Conversely, Mrs. Kuhlmann and her son owe to plaintiff the duties which Dr. Kuhlmann owed to plaintiff during his lifetime under the contract. A determination of the can-

cellation rights and duties of these parties and the corporation *inter se* is the objective of this request for a declaratory judgment. In determining these questions, it must be noted that the rights of Mrs. Kuhlmann and Frederick Kuhlmann, Jr., as heirs of Dr. Kuhlmann, are undivided, joint rights. That is, they own Dr. Kuhlmann's rights jointly.

A realistic reading of the Kuhlmann-Anderson contract with E. T. B. shows that plaintiff here need not wait to cancel until an executor or administrator is appointed for Dr. Kuhlmann's estate. As the court tentatively determined at the trial, Paragraph VII, in view of its words and the circumstances which aid in determining its meaning, was inserted for the benefit and protection of the co-authors and not for the benefit of the publisher. The only reasonable purpose for inserting the provision in the contract was to vest authority in someone who could speak for the devisees or heirs during the period when the estate was being administered. Before that time the co-author could act for himself. After administration there would be no administrator or executor. The devisees or heirs would possess title and would be able to act for themselves. Nothing in the contract shows any intent that the devisees or heirs of the co-author should not be able to make their own decisions as to cancellation. This contract was not limited in duration. It might continue for many years past the lives of the original co-authors and the administrator of their estates. To argue that an administrator or executor must agree to the cancellation regardless of whether the heirs of Dr. Kuhlmann have title and have waived probate of the estate assumes that the administrator always will exist after a co-author's death until the contract is terminated. The defendant corporation interprets this contract so that an administrator must always exist until the termination of the contract even if he has been discharged by court order after performing all the other duties as administrator and the

estate has been completely probated. That this interpretation is unsound is too obvious for dispute. The absurd and unintended results which it can produce demonstrate its unsoundness. The co-authors obviously did not intend that the consent of the administrator should be obtained if none existed. They intended that the consent of one authorized to represent the deceased person's interests be obtained. The consent of the administrator as such would be required only if he was then authorized to act as administrator. Because no administrator exists for Dr. Kuhlmann's estate, none need now consent. The heirs have waived the probate proceeding and their right under the contract to have an administrator consent.

The heirs of Dr. Kuhlmann, however, are the owners of his rights, and plaintiff must obtain their consent. Mrs. Kuhlmann has indicated by her answer in this action that she does not object to the cancellation. Her testimony clearly supports this conclusion. Her letter to plaintiff concerning the matter sustains this view. Consequently, no issue exists between plaintiff and Ruth Kuhlmann. Plaintiff may cancel alone so far as Ruth Kuhlmann is concerned. The defendant corporation cannot complain that Ruth Kuhlmann has not joined in the cancellation or claim that the cancellation is void because Mrs. Kuhlmann did not join in the cancellation in writing. The corporation has prevented Mrs. Kuhlmann from doing so by its own contract with her concerning the Kuhlmann Group Tests, wherein she specifically covenanted not to be a party to the cancellation of the Kuhlmann-Anderson contract with the corporation until 1965. In Holt v. Silver, 169 Mass. 435, 48 N.E. 837, 838, the Massachusetts court met a similar problem. There one copyright owner had sold his rights, including his right to cancel the publishing contract, to the publisher. The other copyright owner—a co-author—sought to cancel alone. The court permitted cancellation by the single co-author despite the re-

quirement of joint cancellation by the co-authors. The court held,

> "The defendants contend that the notice dated July 26, 1892, given by the plaintiff alone, was insufficient to terminate the contract, because the defendant Tufts did not join in giving it. But at that time Tufts had no interest in the contract, since, by the procurement of the defendant Silver, Tufts had assigned his interest to him. The defendant Silver, therefore, by his own act, had put it out of the power of Holt to comply literally with the provisions of the agreement as to notice; and the other defendants, holding by assignment from him, stand in no better position. Eliot National Bank v. Beal, 141 Mass. 566, 568, 6 N.E. 742; United States v. Peck, 102 U.S. 64 [26 L.Ed. 46]. To oblige Holt, under the circumstances, to show that Tufts had refused to join in the notice, is unnecessary, in order to do equity between the plaintiff and the defendants. They should not be heard to complain, or to insist on a formality which they have rendered impossible of performance, or, at the best, entirely unnecessary."

That rule applies here, and the defendant corporation consequently cannot complain that Mrs. Kuhlmann is not joining in the cancellation. Its own acts prevented that to which it now claims it is entitled. Plaintiff can cancel as against the defendant corporation without Ruth Kuhlmann's joining with her in the notice.

The difficulty in this proceeding arises as to plaintiff's right to cancel without the consent of Frederick Kuhlmann, Jr. He is not a party to this action. As noted, he is a co-owner with Ruth Kuhlmann, his mother, of Dr. Kuhlmann's interest in the Kuhlmann-Anderson contract with the publisher. Plaintiff contends that Frederick Kuhlmann, Jr., need not be joined because the defendant corporation has at all times considered him an unnecessary party to its agreements with Mrs. Kuhlmann and that Mrs. Kuhlmann made her contract of July 20, 1945, with the corporation and has received the royalties and other considerations due Dr. Kuhlmann's heirs under the Kuhlmann-Anderson contract with the consent of Frederick Kuhlmann Jr. The defendant corporation does allege in its answer that Mrs. Kuhlmann entered into the contract of July 20, 1945, including the promise that she would not cancel the Kuhlmann-Anderson contract with the corporation, with the knowledge and consent of Frederick Kuhlmann, Jr. Likewise, under that contract, royalties were to be paid to Mrs. Kuhlmann in consideration of her promises and her furnishing the materials Dr. Kuhlmann had given to her prior to his death. The Kuhlmann-Anderson royalties which have been paid to Mrs. Kuhlmann have been all of the royalties due to the Kuhlmann heirs on the Kuhlmann-Anderson contract. That is, her son, Frederick Kuhlmann, Jr., so far as the showing herein discloses, has received none of the royalties. Ruth Kuhlmann has received all of Dr. Kuhlmann's share. Frederick Kuhlmann, Jr., has acquiesced in payment of them to her. Consequently, upon the record here, he obviously has acquiesced in the arrangement between Ruth Kuhlmann and the defendant corporation so far as the royalty payments under the Kuhlmann-Anderson contract are concerned. And he would not be able, on the record here, to collect his share of the royalty payments again from the defendant corporation. But there is nothing to show that he has ratified the contract of July 20, 1945, so that he, as an heir of Dr. Kuhlmann, is bound by that part which prohibits cancellation. The contract between his mother and the publisher, by its terms, only binds his mother—Ruth Kuhlmann—not to cancel. It does not purport by its terms to bind him. Because he apparently has given his mother the royalties does not mean that he, as heir of Dr. Kuhlmann, has given her his entire interest in the Kuhlmann-Anderson tests, including his right to join in the cancellation of the Kuhl-

mann-Anderson contract. Neither the plaintiff nor the defendants have produced any evidence which would justify the conclusion that Frederick Kuhlmann transferred all his interest in the Kuhlmann-Anderson tests to his mother. The mere fact that one person permits another to administer his rights and to gain a benefit from them does not, standing alone, establish a transfer of all rights to the latter person. The evidence here does not justify the conclusion that when Ruth Kuhlmann agreed not to cancel the contract she possessed her son's rights in that regard so that they were included in her covenant not to cancel the Kuhlmann-Anderson contract. Nor does the acquiescence of her son in that contract of July 20, 1945, between her and the publisher, standing alone, establish that she has since acquired them. Neither the terms of the contract between Ruth Kuhlmann and the publisher nor the facts in the light of which it must be interpreted establish that Frederick Kuhlmann or any person other than Ruth Kuhlmann was intended to be bound or was bound by the covenant not to cancel the Kuhlmann-Anderson contract. The contract between Ruth Kuhlmann and the publisher, in view of the record here, did not bind Frederick Kuhlmann, Jr., not to cancel or join in a cancellation of the Kuhlmann-Anderson contract. Consequently, he still possesses his right to join in the cancellation and is free to join with the plaintiff in that cancellation.

His acquiescence in his mother's agreement that she would not cancel the Kuhlmann-Anderson contract is immaterial here as against the defendant corporation. For that act goes to the alleged breach of his fiduciary duty to plaintiff and as between him and plaintiff, not to whether the defendant corporation has disabled him from cancelling. The fact is that he has not been disabled by E. T. B. from cancelling or performing other fiduciary duties to plaintiff. And the record does not justify the conclusion that the defendant corporation obtained the acquiescence of Kuhlmann, Jr., in its contract with his mother. So far as the record here shows, Ruth Kuhlmann, not her son, controlled her interest. Plaintiff does not show that Frederick Kuhlmann, Jr., possessed the right to prevent his mother from entering into the contract with respect to her own interests. As plaintiff urges, the defendant corporation may have dealt exclusively with Ruth Kuhlmann and considered Frederick Kuhlmann, Jr., an extra party concerning Dr. Kuhlmann's interests in the Kuhlmann-Anderson tests. But the contract and the law, not the attitude and practice of the defendant corporation determines if the defendant corporation has prevented Frederick Kuhlmann, Jr., from performing his duties as to plaintiff. Plaintiff cites nothing to show that the defendant corporation now is estopped as against plaintiff from requiring the rights and duties of Frederick Kuhlmann, Jr., to be recognized here so far as the corporation's rights are affected by them, or that it is estopped to insist that Frederick Kuhlmann, Jr., join in any cancellation which is made of the Kuhlmann-Anderson contract.

In view of these premises, the defendant corporation has the right to insist that Frederick Kuhlmann, Jr., and plaintiff join in the cancellation of the contract in question. The following conclusions, therefore, seem proper. The contract between plaintiff, Dr. Frederick Kuhlmann, and the defendant corporation concerning the Kuhlmann-Anderson Intelligence Tests can be cancelled, as between plaintiff and the defendant corporation, only by a joint notice of termination to the defendant corporation from plaintiff, as co-author, and Frederick Kuhlmann, Jr., as heir of Dr. Kuhlmann. Ruth Kuhlmann, wife and only other heir of Dr. Kuhlmann, need not be a party to the cancellation. Because Frederick Kuhlmann, Jr., was not a party to, and did not join in, the notice of termination dated December 27, 1949, from plaintiff to the defendant corporation, that notice was ineffective and the contract between Dr. Kuhlmann, plaintiff, and the defendant corporation con-

cerning the Kuhlmann-Anderson Intelligence Tests still is in effect.

Findings of fact and conclusions of law in harmony herewith may be presented on five days' notice. An exception will be reserved to the aggrieved parties.