## YARBOROUGH v. ATLANTIC LIFE INS. CO., Inc.

### No. 4017.

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

———◆———

W. C. Downing and J. O. Tally, both of Fayetteville, N. C. (D. G. Downing, of Fayetteville, N. C., on the brief), for appellant.

Robert H. Dye, of Fayetteville, N. C., and Adolphus Blair Scott, of Richmond, Va. (Dye & Clark, of Fayetteville, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The insured under the policy in this case met his death by accident, and the beneficiary claims that she is entitled to the sum of $5,000 specified on the face of the policy, and also to an additional sum of like amount under a double indemnity provision in the contract. The company admits its liability for the face of the policy, but denies the additional liability on the ground that the accidental death of the insured occurred after the premium-paying period while the insured was suffering from total and permanent disability and the double indemnity feature of the policy was not in effect.

The facts are not in dispute. Premiums on the policy were regularly paid until August, 1930, when the insured became totally and permanently disabled. Due proof of disability was furnished to the company and approved by it. Further premium payments were waived under the terms of the policy and monthly disability benefits were paid until October 24, 1933, when the insured died as the result of external, violent, and accidental means. At the trial below, the District Judge directed a verdict for the plaintiff for $4,641.29, the face of the policy, less a policy loan due by the insured, and from the judgment based on this verdict the beneficiary appeals.

Two riders are attached to the policy, one entitled "Total Disability Benefits, Waiver of Premiums and Monthly Income During Disability," and the other "Double Indemnity Benefit, Additional Insurance under Conditions Hereinafter Defined." The beneficiary relies upon the terms of the disability rider which provides that if the insured shall furnish due proof to the company that he has become totally and permanently disabled, the company after having placed an indorsement on the rider shall:

"1. Continue the Contract without requiring the payment of premiums, if any, falling due after the approval of said proof, and during the continuance of such disability, during which period the right of the insured to dividends (payable only in cash), Surrender Values, and all other benefits under this contract shall continue with the same force and effect as if premiums were duly paid by the insured; and in addition thereto,

"2. Pay immediately to the insured, after the approval of said proof, $10 for each $1,000 of the face value of this contract and a like sum on the same day of each month thereafter during the life of the insured and the continuance of such disability.

"No deduction will be made from the amount payable at the death of the insured

or from any other value under the contract on account of the waiver of premiums and the payment of the disability income above provided."

On the other hand, the company relies. upon the double indemnity benefit clause which provides that if death occurs before the age of 60, the company will pay to the beneficiary, in addition to the face of the policy, an amount equivalent thereto, provided:

"1. That the death of the insured shall result directly, exclusively and independently of all other causes, from bodily injury effected solely through external, violent, and accidental means, and shall not be caused or contributed to directly or indirectly, wholly or partially, by disease; and

"2. That death shall occur during the premium paying period within ninety days from the occurrence of such injury and before default in the payment of any premium or the waiver of any premium on account of disability; and while this contract is' not in force as paid-up or extended term insurance, and before the happening of any event mentioned in the paragraph below, entitled Cessation of Premium Payments and Protection; * * *"

The contention of the beneficiary is that the insured was led to believe from the terms above quoted from the total disability rider that the double indemnity feature of the policy was contemplated when it was declared in the disability clause during the continuance of the disability all other benefits under the contract "shall continue with the same force and effect as if premiums were duly paid by the insured" and that "no deduction will be made from the amount payable at the death of the insured or from any other value under the contract on account of the waiver of premiums and the payment of the disability income above provided." It is pointed out that the double indemnity payable in case of accidental death is fairly within the description of "the amount payable at the death of the insured" and that in any event, if this clause is ambiguous and may refer either to the face of the policy or to that sum plus a like sum in case of accidental death, the court should apply the settled rule that the interpretation must be adopted which is the more favorable to the policyholder. Mutual Life Ins. Co.

v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102.

It is, however, an equally well-established rule of interpretation that all provisions of a contract should be construed in harmony with one another, if it can be done reasonably, in order to avoid repugnancy between the several parts of the instrument. Bank of Commerce & Trust Co. v. Northwestern Life Ins. Co., 160 Tenn. 551, 26 S.W.(2d) 135, 68 A.L.R. 1380. The interpretation for which the beneficiary contends cannot be adopted if any force and effect is to be given to the condition in the double indemnity rider that the benefits therein described shall accrue, provided that death shall occur during the premium paying period. Obviously this provision means that the liability for double indemnity exists only so long as the premiums are paid, and if this limitation is destroyed by the application of the quoted words in the disability rider, an obligation is imposed upon the company which it did not undertake. The whole contract, including the main policy and both riders, is harmonized if the words of the disability clause with reference to the amount payable at death and the other values are limited to the amount specified on the face of the policy and to the additional values such as the loan and cash surrender values set out in the body of the policy. By so doing, the limitation of the double indemnity rider to the premium-paying period is given effect. That it is reasonable for the company to impose such a limitation cannot be denied, for one who becomes totally and permanently disabled is more susceptible to the possibility of injury and death as the result of accidental means.

It may be noted that the interpretation now given to the policy by the company was first advanced on August 5, 1930, more than three years before the death of the insured, for on that date it indorsed upon the disability rider the statement that proofs of disability of the insured had been approved; that premiums thereafter falling due during the continuance of the disability would be waived, and the disability payments provided would be made; and at the same time, the company indorsed upon the double indemnity rider the statement that the premium on the contract having been

waived on account of disability, the double indemnity agreement was canceled as of October 20, 1930, to which date the premiums had been paid.

The judgment of the District Court is affirmed.