# OCTOBER, 1939.

GERTRUDE A. BURKE, RESPONDENT, v. AMERICAN SAVINGS LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—132 S. W. (2d) 709.

Kansas City Court of Appeals. October 30, 1939.

*Groves & Watkins* and *Mosman, Rogers & Bell* for appellant.

378

*Miles Elliott* for respondent.

SPERRY, C.—Gertrude A. Burke, beneficiary, was plaintiff in a suit based on a life insurance policy issued to her husband, Earl E. Burke, deceased, by The Sentinel Life Insurance Company, the obligation of said policy having thereafter been assumed by American Savings Life Insurance Company, which company was defendant. Gertrude A. Burke will be referred to herein as plaintiff, Earl E. Burke as insured, and American Savings Life Insurance Company as defendant.

Trial to a jury resulted in a verdict and judgment for plaintiff, and defendant appeals.

Defendant urges error on the part of the trial court in over-ruling its demurrer to the evidence offered at the close of the case. We shall confine our statement of facts to a statement only of those facts pertinent to the demurrer on the grounds assigned here.

The policy in question was for life and endowment at age eighty, was duly issued to insured on July 2, 1930, in the principal sum of $2000. Attached thereto and forming a part thereof was a rider which provided that in the event of death by accidental means defendant would pay double indemnity, or an additional $2000. Also attached was another and additional rider which provided that in the event insured should become totally disabled and remain in that condition for a period of four months defendant would waive premiums falling due after the lapse of the said four months and so long as such disability should continue. While the riders each contained provisions for specified annual premiums, for the double indemnity provision $3 per year and for the waiver of premiums provision $1.56 per year, nevertheless there was written into the body of the main policy itself, which policy was in evidence, the following, which is the only reference therein to the subject of premiums, to-wit:

"Premiums.

"This Contract is issued in consideration of the written and printed application which is made a part hereof a copy of which is attached hereto, and of the payment in advance of seventy-seven and 70-100 dollars, being the premium for the first year's insurance under this Policy ending on the 2nd day of July, 1931 which is term insurance, and for the legal reserve if any. The insurance will be continued thereafter as endowment insurance upon the payment of a premium of the same amount on or before the 2nd day of July, in every year until thirty-one full years' premiums shall have been paid or until death of the insured. . . ."

The matter of premiums to be paid is important in view of opposing contentions of the parties hereto. Witness Filley of defendant's conservation department testified that the annual premiums to be paid for the policy were as follows: $73.14 for the main policy, $3 for the double indemnity provision, and $1.56 for the waiver of premiums provision, making a total of $77.70, and stated that the whole premium

was thus separable. He also testified that, upon request, the method of payment of premiums was changed from annually to quarterly, and that the correct quarterly premiums to be paid as the total for the three divisible parts of the policy was: $77.70 \times 6\% \div 4 = \$20.60$.

On August 31, 1932, while the policy was in full force, insured was totally disabled in an automobile accident and, upon due proof thereof, defendant waived payment of premiums during the period of total disability, and until defendant demanded resumption of payment of premiums, on the grounds that insured had recovered from such total disability, from which time forward quarterly premiums of $19.80 each were paid to the St. Joseph office of defendant, for which receipts substantially in the form of the following specimen, which was in evidence, were issued, to-wit:

"PLAINTIFF'S EXHIBIT B.

"Nov. 2, 1938,

"Helen Cormaney, Reporter Div. No. 1.
"Premium receipt.
"American Savings Life Insurance Company
"Kansas City, Missouri.

"Paid By Policy Loan.

"Received the premium deposit described below, subject to the conditions on the back hereof.

"(Signed) R. S. Tiernan, President.

"You have thus renewed a bond of safety.

| "Policy No. | Office Code | Premium | Date due |
|---|---|---|---|
| "L-12737 | QE807230 | $19.80 | 2 day of Oct. 1935 |

"This receipt to be valid must be dated and counter-signed by officer of authorized collector.

"Mr. Earl E. Burke
"3113 Edmond St.
"St. Joseph, Missouri

"Date paid
"Nov. 16, 1935

Countersigned by
"R. S. Tiernan /c
"Vice-Pres.
"Treas. Sec'y Asst. Secy."

Upon insured's death defendant paid the principal life indemnity of $2000, less an outstanding policy loan but denied liability for the double indemnity for accidental death on the grounds that insured committed suicide. This suit was brought for recovery on the double indemnity provision and the jury found that death was by accidental means within the meaning of the policy, and judgment was for the full sum sued for. Defendant contends here that the double indem-

nity provision of the policy ceased to operate, by reason of automatic provisions contained therein, when defendant waived payment of premiums during insured's total disability; and that its demurrer should have been sustained on that ground when the policy was introduced in evidence. Defendant relies on the following clause contained in the double indemnity provision:

"The election either automatically or otherwise of any option under this policy whereby the payment of further premiums is not required, or the approval of any claim for total and permanent disability benefits under this policy shall automatically terminate this supplemental contract."

Defendant does not contend that the double indemnity provision became inoperative because of approval of a claim for total and permanent disability. Indeed, the policy nowhere provided for such a claim to be made. Nor does defendant contend that it ever informed plaintiff or insured, prior to insured's death, or prior to the bringing of this suit, that the double indemnity provision of the policy had lapsed for any cause. However, defendant contends that the double indemnity provision did lapse and cease to be operative from and after the date of the waiver of premiums provision was invoked, and that it did not thereafter collect nor did plaintiff offer to pay the premium required to keep said provision in force.

Regarding the payment of the premium the evidence discloses that plaintiff and insured paid the sum of $19.80 quarterly as demanded by defendant. They were never informed that defendant claimed that the double indemnity provision was not operative, nor that they were not paying as much as the full quarterly premium, including that charged for double indemnity, actually amounted to. In view of the testimony of plaintiff, the clause contained in the main body of the insurance policy which fixed the annual premium at $77.70, the fact that the quarterly premiums paid actually totalled $79.20 per year, the failure of defendant to ever contend, prior to death of insured that the premiums in full for all coverages, including double indemnity, were not paid, we think there was no substantial evidence upon which a finding to the effect that premiums in full on the policy were not paid, could be predicated. Plaintiff was not estopped to claim the double indemnity nor had such right been waived.

Defendant contends, however, that the double indemnity provision was not in effect, because of the plain terms of the contract, under the facts proved by plaintiff's own testimony. If that contention be correct the trial court should have sustained defendant's demurrer to the evidence. We have so held. [Kennedy v. National Accident & Health Insurance Co., 76 S. W. (2d) 748, l. c. 754.]

Defendant says that the expression "further premiums," as used in the clause of the double indemnity provision above quoted, means that when payment of premiums was temporarily suspended (for

the policy nowhere provides for permanent or absolute waiver of premiums) that the double indemnity provision thereupon, immediately and automatically, became forever inoperative. In support of this contention a number of cases are cited, none of which are exactly in point. In the following paragraphs we shall discuss the cases cited.

In Yarborough v. Atlantic Life Insurance Company, 84 Fed. (2d) 319, 1. c. 320, the policy provided that if defendant should become *totally and permanently* disabled the company would waive premiums; and the double indemnity rider provided that benefits under it would be paid if death ". . . shall occur before default in the payment of any premium or the *waiver* of *any* premium on account of disability, . . . (Italics ours.) "The court there held that the company was not liable for the double indemnity. There could be no room for dispute as to the meaning of the expression "waiver of *any* premium on account of disability;" but the policy before us does not use specific language.

The next case cited is that of Great Southern Life Insurance Company v. Jones, 35 Fed. (2d), 122 where the policy under consideration provided that double indemnity would not be payable after default in the payment of premiums, the policy remaining in force at time of death by virtue of provisions for automatic extended insurance. Death occurred after said policy had lapsed for non-payment of premiums and was in effect under automatic provisions for extended insurance. The court properly denied recovery; but the case differs from the one at bar.

Defendant also relies on the case of Kansas City Life Insurance Company v. Pettit (Colorado), 61 Pac. 1027. The policy provided for payment of double indemnity for accidental death occurring *during the premium paying period.* The court denied recovery on the grounds that death occurred two years after the policy had become a fully paid up policy and no premiums were then being paid or were ever thereafter to be paid. Under the terms of the policy the facts presented a simply case for solution; but such are not the facts here.

Defendant also relies on the case of Life and Casualty Company of Tennessee v. Powell (Ala.), 180 Southern 559. Suit was based on a double indemnity clause providing that same "shall cease to be in force when . . . a premium shall be paid by the Company for the insured under the Total and Permanent Disability Clause, if any, in said Policy." (Italics ours.) [1. c. 561.] Insured became disabled and the company paid disability benefits and also waived payment of premiums falling due during such disability. We agree with the result reached in that case. The language used in the policy if followed, permitted no other result.

Both parties here urge the maxim "if the language employed is so plain that there can be but one meaning to it, then, of course there-

is no office to be performed by subsidiary aids to construction."
[Jackson County Light, Heat & Power Company v. City of Independence 188 Mo. App. 157, l. c. 159.]

However, in the case at bar, as in the case above cited, in the language of Judge TRIMBLE: "Each side seems to think the contract plain and unambiguous and that by its explicit terms it fully supports their respective contentions." We there said that such a situation justified the court "in taking into consideration not merely the whole contract, giving effect to every part thereof, but also the circumstances surrounding the parties, the nature of the contract and its subject matter, in the endeavor to get at its true meaning, effect and intention. . . . But a contract which gives rise to such divergent views as those entertained by the parties to the one before us is certainly not one so explicit as to leave no occasion or authority for calling to our help such subsidiary aids in arriving at its proper construction." [Power Company v. Independent, *supra*, l. c. 159, 160.]

To hold for defendant we must say that "further premiums" means "any" premium, or "a" premium, thus adding a word to make the contract explicit. Defendant could have done this, if it had so desired, when it prepared its contract. To sustain plaintiff's position we must say that "further premiums" means "all" further premiums.

In Liggett v. Levy & Union National Bank, 233 Mo. 590, l. c. 601, the court said: "A cardinal rule of interpretation is that words not technical are taken in their ordinary and usual acceptance." We think that when insurance contracts state unequivocally that, upon the happening of a named event, the company will waive "further premiums" it is ordinarily taken to mean that it will not ever thereafter seek to collect, any premium. If a different meaning is intended then more specific language should be used, as was done in Life and Casualty Company of Tennessee v. Powell, *supra*:

"The insurer has the opportunity to have the language of the contract selected with great care and deliberation by experts and legal advisers acting exclusively in its interest, and it is responsible for any ambiguities found therein. *Generalities usually make ambiguities. The insurer can always prevent the necessity of strict construction against it, or any construction at all, by stating the terms of any provision so clearly, definitely, and specifically as to make its meaning so plain that no room is left for construction.*" (Italics ours.) [Henderson v. Mass. Bonding & Insurance Company, 337 Mo. 6, 84 S. W. (2d) 922.]

We hold that the language used, to-wit, "further premiums" means all further premiums, and that, if defendant did not so intend, then it should have used more specific language.

We are not unmindful of the general rule that all provisions of a contract should be so interpreted as to give effect thereto and it may

be said that, the effect of our opinion is to render entirely inoperative the clause providing for the suspension of the double indemnity feature of the policy, since no provision is made for permanent waiver of premiums; but this contention loses force because defendant itself included another clause therein providing that double indemnity should become inoperative in event of the approval of any claim for "total and permanent disability" which clause is wholly meaningless because of the total lack of any provision in the policy for approval or payment of a claim for total and permanent disability. This clause in the rider might be applicable and have force and vitality if the rider should be attached to a different form policy containing provisions under which it could become effective.

Defendant contends that the trial court, by its instruction No. 2 took from the jury the question of whether or not the double indemnity contract was in force and effect at the time of insured's death. Since this question was one of law and not of fact, and depended for its solution upon the construction to be placed on the contract, the instruction is not open to criticism on that point. The judgment should be affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.